725 So.2d 1154 (1998)
Lucinda Jean HINTON f/k/a Lucinda Jean Smith, Appellant/Cross-Appellee,
v.
James SMITH, Appellee/Cross-Appellant.
No. 97-03510.
District Court of Appeal of Florida, Second District.
November 13, 1998.
Rehearing Denied January 29, 1999.
*1155 Charles D. Hinton of Deane & Hinton, P.A., St. Petersburg, for Appellant.
Deborah Marks, Aventura, for Appellee.
FULMER, Judge.
In this dissolution action, the former wife challenges the trial court's order modifying child support. The former husband challenges the trial court's refusal to allow him an opportunity to present the testimony of an expert witness at a later date. Both parties challenge the trial court's failure to conduct a hearing on attorney's fees prior to ruling on their respective motions for fees. We find error in the trial court's award of child support and its ruling on the parties' motions for attorney's fees.

CHILD SUPPORT
On August 2, 1993, the trial court entered a final judgment of dissolution, which ratified and incorporated the parties' marital settlement agreement. Because of the former wife's lack of income, the former husband agreed to pay $1500 per month in child support for their two minor children. He also *1156 agreed to pay $500 per month in rehabilitative alimony for three years, during which period the former wife agreed to attend a "degree-seeking program at an accredited college." Subsequently, the former wife attended classes at St. Petersburg Junior College, but stopped taking classes two courses short of her degree and took a part-time job working thirty-two hours per week earning $9.50 per hour, or $15,500 per year. Both parties remarried.
On June 3, 1996, the former wife filed a petition for upward modification of child support alleging, as a change in circumstances, that the former husband's income had increased. She also requested that payments be made through the Central Government Depository by an income deduction order. The former husband's June 28, 1996, counter-petition for downward modification of child support also alleged a substantial change in circumstances, on three grounds: that his income had decreased; that the former wife's needs had decreased because of her new husband's obligation to pay his fair share of their household expenses; and that the trial court should impute to the former wife an income of between $30,000 and $40,000 per year because the three-year rehabilitative term had ended.
We agree with the trial court's conclusion that there was a change of circumstances sufficient for the trial court to modify child support. The incomes of both the former husband and the former wife had changed substantially. Both sought modification, and neither argues that no modification should have been ordered. Instead, they direct their arguments primarily to the amount of modification and the method by which the trial court calculated the amount of support. Therefore, we conclude that the initial award was subject to modification and address the challenges raised by the parties.
While we realize the trial court could make essentially the same child support award based on proper findings, we are compelled to reverse on four points: (1) imputation of $30,000 income to the former wife; (2) addition of $855 in kind contribution to the former wife's income; (3) reduction of the former husband's net income by the cost of life insurance; and (4) failure to enter an income deduction order.

(1) Imputation of income

The trial court imputed to the former wife an income of $30,000 per year based on the conclusion that she could have earned at least $30,000 if she had completed her degree. The trial court stated:
[T]he Former Wife has failed to rehabilitate herself to the level contemplated by the parties when they entered into the Marital Settlement Agreement.... The Former Wife failed and refused to comply with their agreement by wilfully failing and refusing to complete her last two courses for her degree, which would have provided her with the credentials she needed so as to demand the salary anticipated by the parties. Thus, even though the former wife never earned $30,000 in her life, that annual income can be imputed to her because of the special but reasonable anticipations of the parties' agreement.
Section 61.30(2)(b), Florida Statutes (1997), sets forth the requirements for imputing income:
Income [on a monthly basis] shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community....
The standard of review for a trial court's imputation of income is whether competent substantial evidence supports it. See Scapin v. Scapin, 547 So.2d 1012, 1013 (Fla. 1st DCA 1989); Desilets v. Desilets, 377 So.2d 761, 763 (Fla. 2d DCA 1979). We conclude that the former husband failed to present competent substantial evidence to support the trial court's conclusion that $30,000 *1157 is the prevailing earnings level for a person who holds a two-year accounting degree. The only evidence presented was his own testimony that "[b]ased on the literature that I saw from St. Pete J.C., where she chose to go, there were many, many two-year degrees that would enable somebody to get anywhere from $30,000 to $40,000 a year."
We recognize that the former husband was denied the opportunity to present expert testimony that may have provided competent substantial evidence for the trial court's conclusion. However, even if the former husband had properly established $30,000 as the prevailing earnings level for someone with a two-year accounting degree, the trial court erred by imputing that income level to the former wife when she had not actually obtained a two-year accounting degree. The statute directs the trial court to consider the spouse's "occupational qualifications," not potential occupational qualifications. See Ritter v. Ritter, 690 So.2d 1372, 1374-75 (Fla. 2d DCA 1997) (reversing the trial court's imputation of income because "[t]he evidence did not support the court's finding that [the husband] had the `present ability' to earn in excess of his salary"); Ensley v. Ensley, 578 So.2d 497, 498 (Fla. 5th DCA 1991) (holding that where the former spouse cannot find employment commanding the salary earned in a previous job, it would be futile to order support payments based on imaginary income from unattainable employment).
Furthermore, even if the former wife had completed her degree, the attainment of a degree alone does not guarantee employment or a particular salary and, thus, does not constitute sufficient evidence to support imputation. For example, in Stewart v. Rich, 664 So.2d 1145 (Fla. 4th DCA 1995), the Fourth District reversed the trial court's imputation of $24,000 income per year to the former wife, even though she had recently completed her law degree and obtained her license to practice law. The trial court reasoned, "While it is ... true that the former wife has accomplished a great deal educationally, her accomplishments had not translated into actual employment and income at the time of the final hearing.... Theoretically, the former wife had acquired an earning capacity; in reality, however, she has absolutely no history of earnings and no track record." Id. at 1148.
Neither does expert testimony establishing the prevailing earnings level for holders of a particular degree constitute evidence sufficient to impute that amount of income to a former spouse for child support purposes. The Fourth District rejected a similar argument in Stewart, holding that testimony by the former husband's expert that the former wife should be able to earn $25 to $150 per hour was insufficient to establish the actual ability of the former wife to find employment earning that amount. See id. at 1148-49.
As a general rule, where we have upheld the trial courts' imputation of income, the spouse had a track record of having earned the imputed amount. See, e.g., McLauchlin v. McLauchlin, 580 So.2d 812 (Fla. 2d DCA 1991) (imputing to husband previously earned income of $35,000 after he left job to open his own business); Desilets, 377 So.2d 761, 764 (Fla. 2d DCA 1979) (imputing previously earned income to husband whose testimony showed his ability to earn that amount). In Cushman v. Cushman, 585 So.2d 485, 486 (Fla. 2d DCA 1991), we implied that such a track record is necessary to impute income. We stated that "[b]efore imputing income, the court must determine whether the individual's underemployment resulted through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received." We agree with the Fourth District's holding in Stein v. Stein, 701 So.2d 381, 381 (Fla. 4th DCA 1997), that "income may not be imputed at a level which the former spouse has never earned, absent special circumstances."
Therefore, we hold that the trial court erred in imputing an income of $30,000 per year to the former wife. However, the evidence does support the trial court's determination that the former wife unreasonably limited herself to a less than full-time position. Consequently, the correct amount of income for the trial court to impute to the former wife in this case would have been the amount she would make at her current rate of pay if *1158 she worked full-time. From a review of the entire record, we conclude that the maximum imputed income supported by the evidence would be forty hours at $9.50 per hour, resulting in an annual gross income of $19,760. On remand, we instruct the trial court to recalculate the child support obligation at this maximum level from the date of the former husband's counter-petition on June 28, 1996, unless the evidence on remand establishes that the former wife has actually earned a greater amount during a portion of the period since then.

(2) Addition of in kind contribution to former wife's net income

Each party argued that the other's expenses had decreased upon the other's remarriage because the new spouse should be contributing his or her fair share. In its order modifying child support, the trial court concluded that "$855.00 per month should be added to the former wife's income as an in-kind contribution to which she is entitled and should reasonably be receiving in some respect." The trial court added this amount as additional net income to the former wife. We reverse because no statutory provision authorizes the trial court to include this amount in calculating net income.
Section 61.30(4) provides that net income shall be computed by subtracting allowable deductions from gross income. Gross income includes only those items listed in 61.30(2)(a), one of which is "reimbursed expenses or in kind payments to the extent that they reduce living expenses." We believe that the legislature intended the "reimbursed expenses and in kind payments" to cover items such as food, housing and vehicles furnished by the employer who is paying wages. The effect of a former spouse's remarriage to a new spouse who can contribute to expenses may be an increase in the former spouse's disposable income after he or she pays child support obligations, but it plays no role in calculating child support.

(3) Life insurance deduction from former husband's net income

The parties' marital settlement agreement provided that the former husband would pay for the children's health insurance and for life insurance to cover his child support obligation. The trial court found that the former husband's life insurance to secure his child support was, like the health insurance, "in the nature of support and reduce[d] his net disposable income by the same amount." Section 61.30(3) does not include life insurance as an allowable deduction from gross income. However, from our review of the record, it does not appear that the trial court actually deducted the $74 premium. The figure of $6529, which the trial court attributed to the former husband as net income, consists of the gross wages minus only federal, social security and medicare taxes. Therefore, the trial court's erroneous finding requires no correction.

(4) Income deduction order

In the former wife's petition for modification of child support, she alleged that "[t]he judgment fails to provide that payments should be made through the Central Government Depository, as required by § 61.13(d)" and "fails to provide for entry of a separate order requiring that support be paid by income deduction as required by § 61.1301(1)." The trial court denied the former wife's petition and ordered the former husband to continue paying child support directly to the former wife because the parties agreed at the time of the divorce that he would pay his support directly to her, and he had always paid on time.
Section 61.13(1)(d)3, Florida Statutes (1997), provides that where the parties have previously agreed that payments need not be made through the depository, "[t]he order of support shall provide, or shall be deemed to provide, that either party may subsequently apply to the depository to require direction of the payments through the depository. The court shall provide a copy of the order to the depository." This provision appears to require payment through the depository simply upon application. However, section 61.13(1)(d)4 provides:
If the parties elect not to require that support payments be made through the depository, any party may subsequently file an affidavit with the depository alleging *1159 a default in payment of child support and stating that the party wishes to require that payments be made through the depository. The party shall provide copies of the affidavit to the court and to each other party. Fifteen days after receipt of the affidavit, the depository shall notify both parties that future payments shall be paid through the depository.
This provision appears to provide for subsequent payments through the depository only upon a default, which did not happen here.
Before the legislature amended related section 61.1301 in 1997, it provided that "[u]pon the entry of an order establishing, enforcing, or modifying an obligation for alimony, for child support, or for alimony and child support, the court shall enter a separate order for income deduction if one has not been entered." § 61.1301(1)(a), Fla. Stat. (1995). The legislature adopted that language in 1986 in response to a federal mandate that the states act to reduce nonpayment of child support. See Almodovar v. Gonzalez, 573 So.2d 380, 382 (Fla. 3d DCA 1991) (citing Child Support Enforcement Amendments of 1984, Pub.L. 98-378; 42 U.S.C. § 666(b)). The Governor's Commission on Child Support "reasoned that `to do so would avoid any stigma attached to such an order, and will avoid the need for additional notices and possible hearings before service of the wage assignment.'" Id. at 382 (quoting Final Report of the Governor's Commission on Child Support, at 73 (Sept. 30, 1985) and citing Note, Congress Demands Stricter Child Support Enforcement: Florida Requires Major Reforms to Comply, 10 Nova L.J. 1371 (1986)).
Eight days before the trial court entered the modification order, the legislature amended section 61.1301 to require that "[u]pon the entry of an order establishing, enforcing or modifying an obligation for alimony, for child support, or for alimony and child support, the court shall include provisions for income deduction of the alimony and/or child support in the order.... The order establishing, enforcing, or modifying the obligation shall direct that payments be made through the depository." § 61.1301(1)(a), Fla. Stat. (1997); 1997 Fla. Laws ch. 97-170 (emphasis added).
Section 61.1301(1)(c) further provides, "The income deduction order is effective immediately unless the court upon good cause shown finds that income deduction shall be effective upon a delinquency in an amount specified by the court but not to exceed 1 month's payment." In order to find good cause for a delayed order, the trial court must, at a minimum, make certain enumerated written findings explaining why 1) an immediate income deduction order would not be in the child's best interest, 2) that there is proof of timely payment, and 3) that the obligor has agreed to advise the agency and court depository of payor and health insurance changes or there is a signed agreement providing an alternative arrangement between the obligor and the obligee. See id.
In this case, the trial court entered the modification order on July 9, 1997, and failed to follow the requirements of any of the various statutes pertaining to income deduction. Upon remand, the trial court is directed to provide for immediate income deduction, with payment through the central depository, unless all of the requirements for entering a delayed order are met. See Robinson v. Robinson, 657 So.2d 958, 959 (Fla. 1st DCA 1995).

ATTORNEY'S FEES
At the outset of the modification hearing, both parties and the trial court agreed to address the issue of attorney's fees at a later hearing. Nevertheless, in its order modifying child support, the trial court denied the former wife's request for fees and costs, ruling that although her request was not properly before the court, the modification would provide both parties with an adequate ability to pay their own attorney's fees and costs. Because the parties agreed that the issue of attorney's fees would be addressed at a later hearing and, in fact, did not present evidence or argument on their request for fees, we reverse the trial court's denial of attorney's fees and direct the trial court to set this matter for hearing.
*1160 Reversed and remanded for further proceedings in accordance with this opinion.
ALTENBERND, A.C.J., and CASANUEVA, J., Concur.