912 So.2d 363 (2005)
Susan S. FITZGERALD, Appellant,
v.
Gerald J. FITZGERALD, Jr., Appellee.
Nos. 2D04-3366, 2D04-4907.
District Court of Appeal of Florida, Second District.
October 7, 2005.
*364 Jane H. Grossman of Law Office of Jane H. Grossman, St. Petersburg, for Appellant.
Joseph R. Park and Michael J. Park of Park and Ossian, P.A., Clearwater, for Appellee.
WALLACE, Judge.
Susan S. Fitzgerald (the Wife) challenges multiple provisions of the final judgment that dissolved her long-term marriage to Gerald J. Fitzgerald, Jr. (the Husband). She also seeks review of a separate order that directed the Husband to pay a portion of her attorney's fees, costs, and expert witness fees. There is no cross-appeal. We agree with the Wife that the trial court erred in failing to include the Husband's business income and the in kind payments from his medical practice in calculating his gross income. Accordingly, we reverse the final judgment in part. We also reverse the order for attorney's fees and costs. On remand, the trial court shall redetermine the child support payable by the Husband to the Wife based on a corrected calculation of the Husband's income. The trial court shall also reconsider the amount of permanent, periodic alimony awarded to the Wife and the attorney's fees, costs, and expert witness fees awarded in light of the Husband's corrected income figure. We affirm the final judgment in all other respects.

BACKGROUND
The parties separated in January 2003, after having been married for seventeen and one-half years. Both of the parties were forty-one years old at the time of the final hearing. They have two children  a boy and a girl  who were six years old and three years old, respectively.
The Husband is a physician. After completing his residency, he opened a private practice in Pinellas County. The Husband operates his medical practice through a *365 professional association. The Husband is the sole stockholder of the business.
The Wife graduated from Boston College with a degree in finance, concentrating in accounting. From 1985 to 1994, the Wife was employed at United Parcel Service (UPS) in East Lansing, Michigan. The Wife began work at UPS in an entry-level position, but she received regular promotions to positions with increased responsibilities. She ultimately worked as a district accounting manager, managing eight supervisors and sixty employees and earning over $57,000 per year. In 1994, the Wife left UPS to move to Florida where the Husband was starting his medical internship.
In Florida, the Wife's first job was as a controller for a start-up joint venture; she later worked as a business manager for an engineering consulting firm. The Wife earned approximately $10,000 per year less from these jobs than the salary she had been making when she left UPS. In May 1998, the Wife began to work as the office manager for the new medical practice that the Husband had just established. The Husband testified that the Wife worked in the medical office "full-time pretty much." The Wife continued to work in the Husband's office until early or mid-2002. Thereafter, the Wife stayed home to take care of the children in accordance with what she testified was the parties' prior arrangement.
The parties settled child custody and visitation issues at mediation. They agreed to shared parental responsibility; the Wife was to be the primary residential parent and the Husband the secondary residential parent. The Husband was to enjoy liberal visitation privileges in accordance with a specific schedule.
At trial, the Husband conceded that the Wife was entitled to permanent, periodic alimony. The parties disputed the level of alimony and child support to which the Wife was entitled. The contest at trial about support levels centered on two issues: (1) the amount of the Husband's income and (2) the extent of the Wife's earning capacity.
On the issue of the Husband's income, the Husband's CPA testified that the Husband's gross income was $185,000 per year, or $15,416 monthly. The Wife's CPA disputed this figure. He had performed an extensive analysis of the Husband's income. The Wife's CPA used the salary that the Husband was paid from his medical practice as a starting point and then added the business income earned by the professional association. Next, he examined the business's general ledger for additional income. This examination revealed that the Husband received the benefit of numerous in kind payments made on his behalf by the business  including automobile expenses, voluntary contributions to a retirement plan, and a variety of household and personal expenses. The Husband had failed to list the business income and the in kind payments on his financial affidavit. According to the Wife's CPA, the Husband's monthly gross income averaged $20,000, not $15,416 as the Husband and his CPA claimed.
The Wife suffers from chronic lower back pain and other medical problems. The Wife testified that her various medical difficulties  together with her responsibilities for the care of the parties' two young children  would make it impossible for her to resume full-time employment. However, the pain management doctor who treated the Wife for her lower back problems testified that the Wife's condition would not prevent her from doing sedentary work. In addition, a vocational rehabilitation specialist who had evaluated the Wife at the Husband's request testified that the Wife could reasonably expect to return to *366 full-time work as a comptroller, accounts manager, or accounting clerk supervisor at an estimated median pay range of $40,934.

THE FINAL JUDGMENT AND THE ORDER FOR ATTORNEY'S FEES AND COSTS
In the final judgment, the trial court found that the Husband's gross income from his medical practice was $15,416 per month. The trial court based this finding on "the [H]usband's testimony, financial affidavit, replacement of the Wife as office manager, the increased costs of malpractice insurance[,] and changes in the health insurance industry." The trial court also found that the Wife's medical problems were not debilitating. Based on the testimony of the vocational rehabilitation expert, on the Wife's age of forty-one years, and on her education and extensive experience, the trial court imputed to the Wife a gross income of $40,900 per year.
In accordance with the child support guidelines, the trial court ordered the Husband to pay the Wife $1475 per month as child support. The trial court also ordered the Husband to pay the Wife $4500 per month as permanent, periodic alimony. The assets of the parties were equitably distributed; each of the parties received a net distribution of approximately $576,000.
The Wife's attorney's fees, costs, and expert witness fees totaled $108,199. The Husband's total litigation expenses were $96,448. Prior to trial, the parties had each paid $35,000 from joint assets to their respective attorneys. In a separate order, the trial court directed the Husband to pay "20% of the remainder of the Former Wife's attorney[']s fees, costs[,] and expert fees, up to $96,448.00, which is the amount the Former Husband spent for fees and costs."
The Wife timely appealed the final judgment and the order on fees and costs. In these consolidated appeals, she raises seven issues. Two issues warrant discussion.

DISCUSSION

The Calculation of the Husband's Income
The Wife argues that the trial court erred in failing to include the Husband's business income and the in kind payments from his medical practice in the calculation of his gross income. We agree. The provisions of chapter 61, Florida Statutes (2003), provide guidance on this point.
With respect to alimony, section 61.08(2) provides, in pertinent part:
In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
. . . .
(g) All sources of income available to either party.
With certain exclusions not material here, "income" is broadly defined for purposes of chapter 61 in section 61.046(7):
"Income" means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, compensation as an independent contractor, worker's compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments, made by any person, private entity, federal or state government, or any unit of local government.
In accordance with the statute, the trial court must consider the parties' income from all sources in determining the amount of alimony. See O'Connor v. O'Connor, 782 So.2d 502, 504 (Fla. 2d DCA 2001) (citing Brock v. Brock, 690 So.2d 737 (Fla. 5th DCA 1997)).
*367 Similarly, the definition of "gross income" contained in section 61.30, the child support guidelines provision, is very broad. Section 61.30(2)(a) states, in pertinent part:
Gross income shall include, but is not limited to, the following items:
1. Salary or wages.
2. Bonuses, commissions, allowances, overtime, tips, and other similar payments.
3. Business income from sources such as self-employment, partnership, close corporations, and independent contracts. "Business income" means gross receipts minus ordinary and necessary expenses required to produce income.
. . . .
13. Reimbursed expenses or in kind payments to the extent that they reduce living expenses.
Thus the child support guidelines specifically address the types of income at issue in this case.
In calculating the Husband's gross income, the trial court did not include the Husband's business income or the in kind payments he received from his medical practice. The testimony of the Wife's CPA on this point established that the Husband received an average of an additional $4600 per month from these sources that neither the Husband nor his CPA had acknowledged. Although the Husband's attorney attempted to raise questions about the methodology used by the Wife's CPA in arriving at his conclusions, the testimony of the Wife's CPA on this point was essentially unrebutted. The Husband's CPA did not account for the business income and in kind payments. The Husband failed to include these items on his financial affidavit. Moreover, after a thorough review of the record, we find no competent, substantial evidence to support the suggestion in the final judgment that the additional income identified by the Wife's CPA was somehow offset by the "replacement of the Wife as office manager, the increased costs of malpractice insurance[,] and changes in the health insurance industry." Under these circumstances, in calculating the Husband's gross income, the trial court erred in failing to include the value of the Husband's business income and the in kind payments from his medical practice. See Dep't of Revenue v. Hinnerschietz, 850 So.2d 625, 626-27 (Fla. 2d DCA 2003); Cozier v. Cozier, 819 So.2d 834, 836 (Fla. 2d DCA 2002); Jones v. Jones, 679 So.2d 1270, 1271 (Fla. 2d DCA 1996); Smith v. Smith, 575 So.2d 228, 228-29 (Fla. 2d DCA 1991). Accordingly, we reverse the final judgment in part and remand for reconsideration of the child support award and the alimony award. We also reverse the order for attorney's fees and costs.
On remand, the trial court shall make a new determination of the child support amount based on a corrected calculation of the Husband's gross income that shall include his business income and the in kind payments from his medical practice as identified by the Wife's CPA.[1] In making this determination, the trial court must assign specific dollar values to *368 each of the items in question and include the total value of the items in the Husband's gross income. See Hinnerschietz, 850 So.2d at 627; Garcia v. Garcia, 560 So.2d 403, 404 (Fla. 3d DCA 1990). Because an increase in the Husband's income directly affects his ability to pay alimony and to contribute to the payment of the Wife's litigation expenses, the trial court shall also on remand reconsider the amount of permanent, periodic alimony to be paid by the Husband to the Wife and the amount of his contribution toward her attorney's fees, costs, and expert witness fees.

The Imputation of Income to the Wife
"The standard of review for a trial court's imputation of income is whether competent substantial evidence supports it." Hinton v. Smith, 725 So.2d 1154, 1156 (Fla. 2d DCA 1998). In this case, the Wife had a degree in finance and substantial experience as an accounting supervisor. She had previously earned over $57,000 per year at UPS. In Florida, the Wife had two jobs at which she earned approximately $45,000 per year before she began working in the Husband's medical office. The Wife's treating physician testified that the Wife was still capable of performing sedentary work. The Husband's vocational rehabilitation expert opined that the Wife was capable of earning the amount of income that the trial court imputed to her. Therefore, competent, substantial evidence in the record supports the trial court's ruling on this point, and we are unable to say that the trial court erred in making it.

CONCLUSION
For these reasons, we reverse the final judgment in part. We also reverse the order for attorney's fees and costs. On remand, the trial court shall redetermine the child support award and reconsider the awards of alimony and attorney's fees, costs, and expert witness fees after recalculating the Husband's gross income. In all other respects, the final judgment is affirmed.
Affirmed in part, reversed in part, and remanded.
ALTENBERND and DAVIS, JJ., Concur.
NOTES
[1] The parties have limited their arguments on this point to the issue of whether the trial court erred as a matter of law in failing to include the business income and the in kind payments as determined by the Wife's CPA in the Husband's gross income for the purposes of determining child support, alimony, and attorney's fees and costs. They have not addressed the separate issue of whether any of the individual items included in the CPA's analysis of the Husband's income do not properly qualify as income for these purposes. Therefore, we have no occasion to consider the propriety of including any of the particular items in the Husband's income.