973 So.2d 672 (2008)
Erin S. SCHLAGEL, Appellant,
v.
Frank E. SCHLAGEL, Appellee.
No. 2D07-504.
District Court of Appeal of Florida, Second District.
February 13, 2008.
*673 Erin S. Schlagel, pro se.
Dennis J. Alfonso of McClain, Alfonso, Meeker & Dunn, P.A., Dade City, for Appellee.
*674 SILBERMAN, Judge.
Erin Schlagel (the Wife) appeals, pro se, a final judgment of dissolution of marriage. She contends that the trial court erred in imputing income to her; in failing to require Frank Schlagel (the Husband) to pay permanent, periodic alimony; and in valuing and distributing the marital assets. We affirm the imputation of income but reverse for the trial court to award at least nominal, permanent, periodic alimony. We affirm the remainder of the final judgment, including the equitable distribution, without discussion.
The parties had a long-term marriage of over twenty-one years. They have one son, who was nineteen years old and in college at the time of the final hearing. The record supports the trial court's findings as to the Husband's 2005 gross annual income of $69,500 and that the parties had a lifestyle that, was "reasonably modest, and by no means lavish." At the time of the final hearing, the Husband was forty-six years old and a radiation therapist. The Wife was forty-nine years old and was unemployed. She is Turkish but attended college and law school in the United States, receiving both her undergraduate and law school degrees. The court found that the parties "appeared physically healthy and able to work." The court recognized that the Wife testified that she suffered from depression, but the court noted that she had not put on any evidence that the condition was debilitating or would adversely impact her ability to function socially or to work.
The Wife took care of the parties' son during the marriage, but she had worked outside the home. From 1994 to 1998 her income ranged from a low of $12,226 to a high of $26,683. In 1999, when the parties' son was approximately twelve years old, the Wife decided to attend law school in Mississippi, where the parties were residing at the time. The Wife graduated from law school in 2002, and the parties moved to Florida. The Wife testified that she unsuccessfully attempted the Florida Bar Exam four times and gave up on the idea of being a lawyer. She has had minimal employment since 2000.
The Wife sought $3000 per month in permanent, periodic alimony and presented evidence that her monthly expenses were $2555, not including a mortgage or rent payment. The Husband was making the mortgage payments on the marital home, and the Wife provided no evidence of what her housing costs would be if she moved from the marital home. The Husband testified that he wag renting an apartment for $450 per month. Because the Wife presented no evidence on housing costs, the court used the Husband's housing cost of $450 and added that to the $2555 to determine the amount of the Wife's need.
The parties stipulated that they would introduce into evidence the report of the Husband's vocational expert, Stephen Cooley, without having him testify at the final hearing. The trial court relied on the vocational report to impute income to the Wife. The trial court's detailed oral findings reflect that the court rejected the projections in the report as to income that the Wife could earn from career opportunities that were available if she were licensed by the Florida Bar. Instead, the court accepted the report's conclusions regarding career opportunities available to a person with a law degree but not Florida Bar licensure. The report included a local labor market survey that reflected various employment options that did not require admission to the Florida Bar as a precondition to employment. The court noted several specific jobs in the local market that the report cited, such as a legal assistant, legal recruiter, and a paralegal performing *675 specialized legal research to aid attorneys in complex cases. The report reflected salaries for these local positions ranging from $25,000 to $55,848.
The Wife testified that she cannot get a job and that she is subject to discrimination because she is Turkish. However, at the January 2007 final hearing, she admitted that she had not applied for any jobs in the past six months and that she had not followed up on any of the leads in the vocational report. In fact, the Wife acknowledged that she had not attempted to obtain any employment since March 2005.
Based on the evidence presented, the trial court took the approximate average of the salaries for positions in the local market contained in the vocational report and imputed $40,000 annual income to the Wife. The court, denied the Wife's request for permanent alimony. It gave the parties one year to attempt to sell the marital residence and ordered the Husband to pay the mortgages and association fees until the residence was sold. One-half of those payments would constitute bridge-the-gap alimony to the Wife. The court ordered the Husband to pay $175 per month for one year following the sale of the residence as additional bridge-the-gap alimony. Finally, the court awarded as lump-sum alimony. mortgage payments that the Husband had previously made of $38,000 and an automobile worth $2500.
The standard of review concerning a trial court's imputation of income is whether competent, substantial evidence supports' the trial court's decision. Fitzgerald v. Fitzgerald, 912 So.2d 363, 368 (Fla. 2d DCA 2005); Hinton v. Smith, 725 So.2d 1154, 1156 (Fla. 2d DCA 1998). Here, the parties stipulated to the vocational expert's report being admitted into evidence without his testimony at the final hearing. The report contains competent, substantial evidence that employment is available in the local market for a person with the Wife's qualifications and that the average pay is $40,000. In Fitzgerald, where the wife had an earning history of up to $57,000 per year, this court determined that a vocational expert's testimony was competent, substantial evidence that the wife could earn the imputed amount of $40,900. 912 So.2d at 368.
In Stewart v. Rich, 664 So.2d 1145, 1148 (Fla. 4th DCA 1995), the court recognized that "under certain circumstances a trial court may impute income to one spouse in the context of an award of alimony but the decision to remain unemployed or underemployed must be voluntary." In Cushman v. Cushman, 585 So.2d 485, 486 (Fla. 2d DCA 1991), this court explained as follows:
Before imputing income, the court must determine whether the individual's underemployment resulted through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received. The court must consider not only recent work history but also occupational qualifications and prevailing earnings.
The Wife relies upon Hinton, in which this court stated, "As a general rule, where we have upheld the trial courts' imputation of income, the spouse had a track record of having earned the imputed amount." 725 So.2d at 1157. This court agreed "with the Fourth District's holding in Stein v. Stein, 701 So.2d 381, 381 (Fla. 4th DCA 1997), that `income may not be imputed at a level which the former spouse has never earned, absent special circumstances.'" 725 So.2d at 1157. Here, the trial court was aware that the Wife's recent work history showed minimal earnings, but the Wife had obtained a law degree toward the end of the marriage. The Wife furthered her education *676 and developed new skills, and the trial court considered the Wife's occupational qualifications and prevailing earnings. In Stewart, which this court cited in Hinton, the Fourth District reversed an imputation of $24,000 in income to a spouse who had recently obtained her law degree and license to practice law. The court recognized that the former wife had no track record of earnings. However, the Stewart court explained, "Our concern is not with the decision to modify [alimony] or the amount imputed, but with the trial court's decision to impute income of $2,000 per month to the former wife, effective immediately." 664 So.2d at 1148. The court stated that "the trial court should have provided a reasonable period before implementing the modification to provide the former wife with an opportunity to search out available employment opportunities in the legal field." Id. at 1149. The court further stated that "[a]fter a reasonable period of time, the burden would then be on the former wife to show that she is unemployed or underemployed as a result of any number of factors unrelated to her own efforts to secure employment, including her state of health or the realities of the job market." Id.
In the present case, the trial court found, based on competent, substantial evidence, that the Wife failed to use her best efforts to secure employment. In fact, it is undisputed that between the time of the parties' separation in March 2005 and the final hearing in January 2007, the Wife made no effort to secure employment, despite the leads provided in the vocational expert's report of August 2006.[1] Thus, we conclude that the trial court had competent, substantial evidence before it to impute income of $40,000 to the Wife.
Regarding alimony, in the context of a long-term marriage there is an initial presumption in favor of permanent, periodic alimony. Schomburg v. Schomburg, 845 So.2d 257, 258 (Fla. 2d DCA 2003). The primary factors for the trial court to consider are the needs of one spouse and the ability of the other spouse to pay. Hann v. Hann, 629 So.2d 918, 920 (Fla. 2d DCA 1993). In determining need, the trial court was obligated to, and did, consider the factors in section 61.08(2), Florida Statutes (2005), as evidenced in the trial court's oral findings and written judgment. A trial court's decision on whether permanent, periodic alimony is appropriate is subject to an abuse of discretion standard of review. See Murray v. Murray, 598 So.2d 310, 312 (Fla. 2d DCA 1992).
Under the circumstances of this case, we conclude that the trial court abused its discretion in not awarding at least a nominal amount of permanent, periodic alimony to the Wife. See Nourse v. Nourse, 948 So.2d 903, 904 (Fla. 2d DCA 2007) (concluding "that the historic incomes of the parties, the length of the marriage, and the wife's potential future needs require an award of at least a nominal amount of permanent alimony"). In Nourse, the trial court awarded only bridge-the-gap alimony. This court determined that an award of nominal permanent alimony "will permit the wife to petition the trial court to pursue a future increase in permanent alimony should she continue to be unable to work" and that "it will preserve the jurisdiction of the trial court to revisit the matter as the parties go on with their new lives." Id.
Similarly, the award of a nominal amount of permanent alimony here will allow the trial court to increase the alimony *677 award should the Wife find that she is unable to secure employment, after using her best efforts, in the imputed amount. Thus, we reverse the complete denial of permanent, periodic alimony and remand for the trial court to award at least nominal alimony of $1 per year in this long-term marriage. On remand, the court may determine whether more than a nominal amount of permanent alimony is appropriate, taking into account the circumstances at the time of remand, such as the Wife's current employment status and earnings.
Affirmed in part, reversed in part, and remanded.
STRINGER and WALLACE, JJ., Concur.
NOTES
[1] The trial court noted that law school enhanced the Wife's skills for analytical thinking. The Wife represented herself at the final hearing and on appeal.