VILLANTI, Judge.
Kathleen Liebrecht (the Wife) appeals various aspects of the final judgment dissolving her marriage to Thomas Liebrecht (the Husband). We affirm the final judgment in all respects except one. Because the trial court abused its discretion under the specific circumstances of this case by failing to award the Wife a nominal amount of permanent alimony, we reverse the portion of the final judgment that denied the Wife’s claim for permanent alimony and remand with instructions.
*417 This case involves a marriage that lasted fifteen years and eight months, putting it at the upper end of the “gray area.”[1] During the majority of the marriage, the Husband worked in the residential real estate industry, and his career followed the trajectory of the Florida housing market. His income peaked in 2006, but since that time, it has steadily declined. In 2008, he was laid off from his position as land acquisition manager for a large home builder. After several months of unemployment, the Husband was able to find a job with a company that bought, rehabbed, and resold foreclosed homes; however, this job paid only two-thirds of his previous income. To make up the difference, the Husband took a part-time job providing IT services on an hourly basis to a law film. He also liquidated various stock accounts owned by the parties and sold other assets to support the Wife and children during the dissolution proceedings.
The Wife, who holds a bachelor of science degree in accounting from Florida State University, worked full-time during the early part of the parties’ marriage. However, after the parties’ first child was born, she gradually reduced her schedule. By the time the parties’ second child was born, the Wife was providing accounting advice over the phone to her sister for fewer than two hours per month. At the time of the dissolution hearing, the Wife had not had any appreciable outside employment for thirteen years. There was no dispute that the Husband and Wife had agreed that the Wife would forego her career to care for the parties’ home and children.
At the dissolution hearing, the Wife argued that she should be awarded permanent periodic alimony based on the length of the parties’ marriage and their agreement that she would not work outside the home but would instead be a “stay-at-home mom” to care for the parties’ children. The Husband argued that the Wife should be able to obtain some level of employment using her accounting degree and experience, particularly now that the children are older. Neither party, however, presented any evidence to show what the Wife’s employment prospects were, and the Wife admitted that she had not even tried to find a job during the pendency of the dissolution proceedings.
At the conclusion of the hearing, the trial court found that while the Wife had not been in the workforce for over thirteen years, she was relatively young, well-educated, and in good health. Based on these findings, the trial court declined to award her permanent periodic alimony. Instead, the court awarded the Wife lump-sum, nonmodifiable bridge-the-gap alimony of $125,000 payable in monthly installments of $2500 for fifty months. This award gives the Wife slightly more than four years to reenter the workforce and become self-supporting, after which time she will receive no support from the Husband.
In this appeal, the Wife argues that the trial court abused its discretion by awarding her bridge-the-gap alimony rather than permanent periodic alimony based on the length of the marriage and her status as a “stay-at-home mom.” While we find no abuse of discretion in the award of bridge-the-gap alimony, we do find that the trial court abused its discretion in not awarding nominal permanent alimony to preserve the Wife’s right to seek a larger award of permanent alimony should she be unable to become self-supporting.
*418 Bridge-the-gap alimony is appropriately awarded when one party, who has the capacity for self-support, needs “an award of permanent, lump-sum alimony, paid over a set period, to ease a party’s transition from married life to single life.” Blanchard v. Blanchard, 793 So.2d 989, 991 (Fla. 2d DCA 2001). This type of alimony is designed “to assist a spouse with any legitimate, identifiable, short-term need under circumstances where a lump sum award is reasonable and when the other spouse has the ability to pay the award.” Borchard v. Borchard, 730 So.2d 748, 753 (Fla. 2d DCA 1999). In keeping with this purpose, this court has affirmed awards of bridge-the-gap alimony when the requesting spouse has the education and skills necessary to obtain employment and become self-supporting but needs financial support for a defined period of time in which to find such employment and transition back into the workforce. See, e.g., Schlagel v. Schlagel, 973 So.2d 672 (Fla. 2d DCA 2008) (affirming award of bridge-the-gap alimony when unemployed wife had a law degree and could reasonably be expected to obtain employment in the legal field but needed financial support during her job search); Nourse v. Nourse, 948 So.2d 903 (Fla. 2d DCA 2007) (affirming award of bridge-the-gap alimony when unemployed college-educated wife could reasonably be expected to obtain meaningful employment but needed a period of time with financial support to make the transition back into the workforce). Of course, for bridge-the-gap alimony to be properly awarded, there must be sufficient evidence to show that the perceived “gap” may reasonably and actually be “bridged” during the time such alimony is to be paid.
Here, the evidence at the dissolution hearing showed that the Wife holds a bachelor’s degree in accounting, has taken graduate courses in accounting, and has worked as an accountant in the past. With her education and experience, the Wife has a reasonable level of earning capacity and should be able to obtain employment sufficient to become self-supporting. The Wife’s argument at the dissolution hearing that she cannot reasonably be expected to find employment is less than credible since she herself admitted that she has not tried to do so. However, the trial court recognized that it would take some time for the Wife to achieve self-support since she has been out of the workforce for thirteen years. To account for this, the trial court awarded the Wife lump-sum, nonmodifiable bridge-the-gap alimony of $125,000, payable in monthly installments of $2500 for fifty months. Given the Wife’s relative youth, education, and work experience, we cannot say on this record that this award constituted an abuse of discretion.
Nevertheless, based on the evidence presented at the hearing and the current economic climate, we do not share the trial court’s optimism that the Wife can definitively and realistically reenter the workforce after a thirteen-year gap in employment and achieve self-sufficiency in four years while also caring for the parties’ three school-age children. Moreover, the historic incomes of the parties, the length of the marriage, and the Wife’s potential future needs would normally dictate an award of permanent alimony. Accordingly, we conclude that it was an abuse of discretion to fail to award the Wife nominal permanent alimony on these facts.
In this respect, this case is similar to Schlagel. There, the evidence showed that the husband had worked throughout the marriage while the wife had worked only sporadically. Schlagel, 973 So.2d at 674. During the marriage, the wife had obtained her law degree; however, she had been unable to pass the Florida Bar examination and had been unemployed since her graduation. Id. Based on a vocational re *419 habilitation expert’s report, the trial court imputed income to the wife based on jobs available to persons with a law degree but no Florida Bar licensure. Id. at 675. Then, based on this imputed income, the trial court denied the wife’s request for permanent alimony. Id.
On appeal, this court affirmed the imputation of income but reversed the denial of any permanent alimony. Id. at 676. In doing so, we noted that an “award of a nominal amount of permanent alimony here will allow the trial court to increase the alimony award should the [w]ife find that she is unable to secure employment, after using her best efforts, in the imputed amount.” Id. at 676-77. We found this to be an appropriate disposition because the “award of nominal permanent alimony ‘will permit the wife to petition the trial court to pursue a future increase in permanent alimony should she continue to be unable to work’ and that ‘it will preserve the jurisdiction of the trial court to revisit the matter as the parties go on with their new lives.’ ” Id. at 676 (quoting Nourse, 948 So.2d at 904). Thus, this court reversed the complete denial of permanent alimony and remanded for the trial court to award nominal alimony of $1 per year. Id. at 677.
Here, as in Schlagel, the trial court should have awarded nominal permanent alimony to the Wife to preserve her ability to seek an increase should she be unable to secure employment at a self-supporting level after using her best efforts to do so. Given today’s economy and the Wife’s long absence from the workforce, the gap may simply be too large for her to successfully bridge, even with her best efforts. Accordingly, we reverse the complete denial of permanent alimony and remand for the trial court to award nominal alimony of $1 per year to the Wife. In all other respects, the final judgment of dissolution is affirmed.
Affirmed in part, reversed in part, and remanded with instructions.
ALTENBERND and SILBERMAN, JJ., Concur.

. We note that section 61.08(4), Florida Statutes (2010), which describes a "moderate-term marriage” as one "having a duration of greater than 7 years but less than 17 years,” does not apply to this case, which was filed in October 2008.