MORRIS, Judge.
Victoria R. Fortune, the wife, appeals the final judgment dissolving her marriage to Gregg R. Fortune, the husband. Of the ten issues raised by the wife on appeal, we *444 conclude that the trial court erred in regard to the four main points addressed below. We reverse the final judgment and remand for further proceedings on these issues.
I. Facts
The parties married in 1991 in Michigan. They resided in Michigan until they moved to Florida in 2007. They have five children who were born between 1992 and 2000 and were minors at the time of the final judgment of dissolution entered on October 7, 2009. Early in the marriage, the husband left his job at Ford Motor Credit and became a certified financial planner. At the time of the dissolution, he owned a financial planning company in Michigan and was a partner in a financial planning company in Florida. His businesses were extremely successful in the years leading up to the dissolution proceedings, when he reported yearly income in the range of $246,000 to $346,000. During the marriage, the wife was a homemaker and home-schooled the children.
The parties separated in January 2008, and the husband filed the petition for dissolution at that time. During the pen-dency of the dissolution proceedings, the husband reported earning significantly less income, which he attributed to the economic recession. At the time of trial, he claimed a net income of zero. The wife became a certified personal trainer and worked part-time during the parties’ separation but had stopped working and was attending college at the time of the dissolution.
In the final judgment of dissolution, the trial court denied the wife’s request for permanent alimony and declined to reserve jurisdiction to award alimony in the future. The trial court awarded the parties shared parental responsibility of the children with the wife caring for the children 60% of the time. The trial court imputed monthly income in the amount of $1000 to each parent, resulting in the husband’s child support payment being $158.10 per month under the child support guidelines. In its equitable distribution determination, the trial court found that the marital liabilities outweigh the marital assets of the parties and distributed to each party $111,309 in marital liabilities.
II. Analysis
A. The $150,000 advance
The wife first argues on appeal that the trial court erred in finding that an alleged advance from the husband’s Florida business to the husband constituted a marital debt and in factoring that debt into the equitable distribution scheme to the detriment of the wife.
The husband owns 40% of the Florida business, Prosperitas Financial Advisors. At the final hearing, the husband testified that the 60%-owner of Prosperitas, Harry Cendrowski, advanced the husband $150,000 against future income. The husband testified that he incurred the loan both before and after the parties’ separation and that he used the loan for “marital purposes.” This obligation to Prosperitas was not reflected on the husband’s original financial affidavit filed approximately six months after he filed the petition for dissolution. It was also not reflected on any of his subsequent financial affidavits filed thereafter. At trial, the husband testified that he did not have a promissory note or any other writing documenting the loan, but he was permitted to introduce into evidence an affidavit of Mr. Cendrowski. The affidavit stated that the advance was made to the husband in monthly installments from September 2007 until present. One of the pretrial orders in the record indicates that the husband stated he borrowed the money to pay the temporary awards ordered by the trial court, but the *445 trial court did not make a finding in that temporary order as to when the advances were made or how much of the money was borrowed to pay the temporary awards.
In the final judgment, the trial court listed the remainder of this $150,000 obligation ($146,007) as a marital liability and distributed it in total to the husband. This benefitted the husband because in attempting to equitably distribute the marital property, the trial court awarded the husband the only real marital assets — the remaining balances of the retirement accounts. The trial court also ordered the wife to pay a $22,000 equalizer payment to the husband within four months of the judgment in order to balance out the negative awards to both parties in the equitable distribution scheme.
We review de novo the trial court’s characterization of an asset or liability as “marital.” Buxton v. Buxton, 963 So.2d 950, 953 (Fla. 2d DCA 2007). Relevant to the facts of this case, “[t]he cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is ... the date of the filing of a petition for dissolution of marriage.” § 61.075(7), Fla. Stat. (2009). Assets and liabilities not in existence on that date should not be classified as marital. See Schmitz v. Schmitz, 950 So.2d 462, 463 (Fla. 4th DCA 2007); Byers v. Byers, 910 So.2d 336, 344-45 (Fla. 4th DCA 2005). Moreover, a total loan obligation should not be classified as a marital debt if part of the debt is used to pay for nonmarital expenses. See Walker v. Walker, 827 So.2d 363, 364-65 (Fla. 2d DCA 2002) (holding that it would be improper for the trial court to classify as marital debt portions of a loan that were used to pay for nonmarital property expenses; reversing and remanding for trial court to “reevaluate whether and to what extent the challenged loans are to be treated as marital debts”).
It is first necessary to address the affidavit of Mr. Cendrowski. It was the sole corroboration for the husband’s testimony that Prosperitas advanced the husband $150,000. The affidavit, an out-of-court statement offered to prove the truth of the matter asserted, is the most basic form of hearsay. See § 90.801(l)(c), Fla. Stat. (2009). It is well settled that affidavits are not admissible to prove facts in issue at an evidentiary hearing because they are not subject to cross-examination and because they impermissibly shift the burden of proof to the other party. B.C.S., S.r.l. v. Wise, 910 So.2d 871, 874 (Fla. 5th DCA 2005).
This loan was a critical piece of the equitable distribution scheme. By allowing the husband to introduce Mr. Cen-drowski’s affidavit without calling Mr. Cendrowski as a witness, the trial court denied the wife the right to confront and cross-examine the only witness who could corroborate the husband’s claim regarding this substantial loan. The trial court abused its discretion in admitting Mr. Cen-drowski’s affidavit. See O’Brien v. O’Brien, 899 So.2d 1133, 1137 (Fla. 5th DCA 2005) (holding that the admission of evidence is in the discretion of the trial court).
 The remaining, properly admitted evidence did not support the husband’s assertion that the $150,000 loan was incurred before the dissolution filing or that it was spent on marital expenses or obligations. The trial court made no findings regarding when the advance was made to the husband or what expenses the advance was used to pay. Therefore, it was error for the trial court to classify the entire amount of the loan as a marital debt. See Walker, 827 So.2d at 365. Accordingly, we reverse the equitable distribution determi *446 nation and remand for a further hearing on this matter. In accordance with this opinion, the trial court shall reconsider the $150,000 loan and adjust the equitable distribution scheme accordingly, including the equalizer payment of $22,000 that resulted from the classification and award to the husband of the $150,000 liability. We note that “[a] lump sum equalizing payment to accomplish equitable distribution ‘is properly awarded only when the evidence reflects a justification for such an award and the ability of the paying spouse to make the payment without substantially endangering his or her economic status.’ ” Bishop v. Bishop, 47 So.3d 326, 331 (Fla. 2d DCA 2010) (quoting Vigo v. Vigo, 15 So.3d 619, 622 (Fla. 3d DCA 2009)). The record clearly reflects that the wife did not have the financial ability to make the equalizing payment without endangering her economic status.
B. Future alimony.
On appeal, the wife challenges the trial court’s failure to award her permanent alimony or, at the least, to award her nominal alimony so that she may seek alimony in the future. In the final judgment, the trial court found that the husband does not have the current ability to pay and also declined to reserve jurisdiction to consider alimony in the future. The court acknowledged that the length of the marriage created a presumption that it should award nominal permanent alimony and reserve jurisdiction to modify alimony in the future, but the trial court concluded that the presumption had been rebutted because the “[hjusband will be unlikely to again earn substantial income as a financial advisor.”
We review the trial court’s decision on alimony for abuse of discretion. See Schlagel v. Schlagel, 973 So.2d 672, 676 (Fla. 2d DCA 2008). The parties had been married sixteen years when the petition for dissolution was filed. This constitutes a long-term marriage, see Cardillo v. Cardillo, 707 So.2d 350, 351 (Fla. 2d DCA 1998), which creates a presumption in favor of permanent, periodic alimony, see Schlagel, 973 So.2d at 676. It is undisputed that the husband earned substantial income in the years leading up to the dissolution proceedings and that during the marriage, the wife was a stay-at-home mom who home-schooled the parties’ children. She was young when the parties married and' did not work outside the home or obtain job skills until the dissolution proceedings. These factors make this a classic permanent alimony case. See Alcantara v. Alcantara, 15 So.3d 844, 846 (Fla. 3d DCA 2009).
In the final judgment, the trial court found that the. husband does not have the current ability to pay alimony. While we find no abuse of discretion in that regard, we find an abuse of discretion in the finding that the husband will unlikely have the ability to pay alimony in the future. At trial, the husband was optimistic about his future earning potential. He testified that although the financial planning industry was struggling, he decided to remain in the industry because he has a great client base and he has hopes of doing better in the future. He also decided to keep his current staff and overhead. He testified that he is “very good at what [he] do[es],” that Florida “still has opportunity for” him, and that he is working with a successful and established Michigan accounting firm that is interested in his services.
“[W]hen one party is entitled to permanent periodic alimony but the other spouse has no current ability to pay, the trial court should award a nominal sum of permanent - periodic alimony, which will give the court jurisdiction to reconsider *447 the award should the parties’ financial circumstances change.” Schmidt v. Schmidt, 997 So.2d 451, 454 (Fla. 2d DCA 2008); see also Purrinos v. Purrinos, 34 So.3d 244, 245 (Fla. 3d DCA 2010). In light of the trial court’s failure to award permanent alimony to the wife and the husband’s decision to stay in the financial planning business based on his belief that his earning capacity will improve in the future, the trial court abused its discretion in failing to at least award nominal alimony in order to retain jurisdiction to reconsider alimony in the future. See Schmidt, 997 So.2d at 454; Nourse v. Nourse, 948 So.2d 903, 904 (Fla. 2d DCA 2007). We reverse the final judgment in this regard and remand for the trial court to award a nominal amount of permanent alimony to the wife.
C. The husband’s three dependency exemptions
In the final judgment, the trial court awarded the husband tax deductions, tax exemptions, and tax credits for three of the parties’ children and awarded the same to the wife for their other two children. The trial court directed the parties to execute the forms necessary to effectuate this provision of the final judgment. The wife argues that the trial court erred by transferring the exemptions directly and in failing to condition the exemption on the husband’s being current in his child support payments.
Section 61.30(ll)(a)(8) provides that “[t]he court may order a parent to execute a waiver of the Internal Revenue Service dependency exemption if the paying parent is current in [child] support payments.” In doing so, “[t]he trial court cannot allocate the dependency tax exemption directly” but can “require the custodial parent to execute a waiver transferring the exemptions to the noncustodial parent.” Wamsley v. Wamsley, 957 So.2d 89, 92 (Fla. 2d DCA 2007). Additionally, the final judgment must require that the exemption be conditional on the paying spouse’s “being current in his support obligations.” Id.; see also Davies v. Turner, 802 So.2d 1195, 1196 (Fla. 1st DCA 2002).
We reverse this portion of the final judgment. On remand, the trial court shall direct the wife to execute the necessary waivers of exemptions and order that the husband’s exemptions be conditioned on his being current in his child support obligations.
D. The wife’s maiden name
It is established law that in a dissolution of marriage proceeding, the wife has the right to reassume her maiden name if she so chooses. In re Hooper, 436 So.2d 401, 403 (Fla. 2d DCA 1983). The husband concedes as much in his answer brief. The wife repeatedly asked the trial court to restore her maiden name by pleading for such relief in her counterpetition for dissolution, by requesting this relief at trial, and by objecting to the fact that the husband’s proposed judgment did not include this relief. She also raised it again in her motion for rehearing. The trial court erred in denying the wife’s request in this regard. We therefore reverse and remand for the trial court to restore the wife’s maiden name.
III. Conclusion
We reverse the final judgment of dissolution with respect to the matters discussed above and remand for limited proceedings consistent with this opinion. We affirm the final judgment in all other respects.
DAVIS and VILLANTI, JJ., Concur.