EDWARDS, J.
Sarah Frerking, Appellant, appeals the final judgment of dissolution of marriage, arguing that the trial court erred in denying her request for permanent periodic alimony and in imputing the income of a public school teacher to her. We agree and reverse for further proceedings.
Appellant and Appellee, Steven Douglas Stacy, had been married for nearly nineteen years when, in 2014, she filed her petition for dissolution of marriage, which included a demand for permanent alimony. The final judgment was rendered a little more than a year after the last day of trial. Regarding the issues on appeal, the trial court found that Appellant had a present need for $ 1250 per month in alimony and that Appellee had the ability to pay. Instead of awarding permanent alimony as Appellant requested, the trial court ordered durational alimony of $ 1250 per month for six years. The trial court's decision to award durational rather than permanent alimony was based upon imputing $ 43,000 in annual income to Appellant, the salary of a full-time public school teacher.
Permanent periodic alimony is intended "to provide for the needs and necessities of life as they were established during the marriage ... for a party who lacks the financial ability" to meet those needs "following a dissolution." § 61.08(8), Fla. Stat. (2018). Durational alimony, on the other hand, "is to provide a party with economic assistance for a set period of time following *275 a marriage of short or moderate duration or following a marriage of long duration if there is no ongoing need for support on a permanent basis." § 61.08(7).
Permanent alimony is presumed to be appropriate after a long-term marriage, and a marriage lasting seventeen years or more is presumed to be long-term. Hedden v. Hedden , 240 So.3d 148, 151 (Fla. 5th DCA 2018) ; see also § 61.08(4). The failure of a trial court to acknowledge the presumption in favor of permanent alimony, if it applies, often coincides with a finding that the trial court erred by not awarding permanent periodic alimony. See Hua v. Tsung , 222 So.3d 584, 588 (Fla. 4th DCA 2017) ("The trial court's judgment erroneously fails to make any reference to [the permanent alimony] presumption."); see also Bruce v. Bruce , 243 So.3d 461, 463 (Fla. 5th DCA 2018) ("The evidence was also undisputed that the parties had been married for twenty years.... However, the trial court's final judgment does not mention the long-term marriage presumption."); Berger v. Berger , 201 So.3d 819, 824 (Fla. 4th DCA 2016) ("The trial court erred in not awarding the wife permanent alimony because: (1) even though the marriage was a long term marriage, the court did not find that a rebuttable presumption existed in favor of permanent alimony ...."). Here, in its final judgment, the trial court mentioned Appellant's request for permanent alimony, but failed to mention the presumption in favor of permanent alimony in this marriage of nearly nineteen years. It is an abuse of discretion to not award permanent periodic alimony in a long-term marriage unless the presumption favoring such an award is overcome by competent, substantial evidence. Motie v. Motie , 132 So.3d 1210, 1214 (Fla. 5th DCA 2014). Thus, we must examine whether that presumption was indeed rebutted in this case.
Apparently, the trial court chose to award durational alimony in lieu of permanent alimony based upon its conclusion that Appellant could be immediately employed as public school teacher earning an annual salary of $ 43,000, which the trial court found would be sufficient to provide for her current needs. In reaching this conclusion, the trial court overlooked the fact that Appellant had never been a full-time teacher and had never earned an annual salary equal to even half that amount.
The evidence showed that Appellant had rarely worked full time during their marriage; instead she had primarily been a homemaker focused on the couple's children. During their nineteen-year marriage, Appellant had twice worked as a part-time community college instructor, for approximately one year each time, with about ten years between those jobs. Appellant had worked in several other temporary and part-time positions during their marriage, including as a data-entry clerk, an academic adviser and test proctor, a tutor, and a piano teacher. On occasion, she worked as a substitute teacher earning $ 75 per day, but she had never been a permanent school teacher. As far as her actual earnings from employment, the evidence presented at trial showed that the most she made was $ 14 per hour, working eighty hours per month, for a maximum historical income of less than $ 14,000 per year. When Appellee was required to move as part of his employment with the Air Force, Appellant's employment would cease. The evidence showed that during the pendency of the suit she submitted many job applications but had not obtained full-time employment.
Balanced against this evidence of Appellant's actual work history and employment efforts was the testimony of Appellee's vocational expert. This expert hypothesized that Appellant's educational *276 background, a bachelor's degree in public relations and a master's degree in communications, qualified her to teach either elementary or high school, where he believed she could earn between $ 43,000 and $ 50,000 per year. Appellee's expert conceded that before she could teach certain subjects, Appellant would have to pass subject matter exams, but he had no information about the likelihood of her success on those exams. The expert also conceded that to complete her certification, Appellant would have to take college-level education courses. Finally, the expert testified that in order to teach kindergarten through fifth grade, Appellant did not need to pass a subject matter exam, and that she was qualified for those teaching positions at the time of trial.
Both Appellee's expert and the trial court overlooked the legal requirement that Appellant would have to be certified before she could become a permanent, full-time public school teacher, even at the elementary school level. In order to be professionally certified as an elementary school teacher, one must either have a bachelor's or higher degree with a major in elementary education or have a bachelor's or higher degree in another subject with thirty semester hours in elementary education. Fla. Admin. Code R. 6A-4.0151(1)-(2). A temporary three-year certificate to teach elementary school is available upon proper application to anyone who passes the elementary education subject matter exam, after which professional certification can be achieved through additional training and a demonstration of the "mastery of general knowledge." § 1012.56(2)(a)-(i), (5), (7)(b), Fla. Stat. (2018) ; Fla. Admin. Code R. 6A-4.0021(9)(c). Based on the evidence presented at trial, Appellant had no teaching certificate and did not meet the educational requirements to hold a public school teacher's job in Florida.
Trial courts can impute income to an unemployed or underemployed spouse, but they must make the following findings: first, that any "termination of income was voluntary"; and second, that the spouse's underemployment was owing to "less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received." Schram v. Schram , 932 So.2d 245, 249-50 (Fla. 4th DCA 2005) (quoting Konsoulas v. Konsoulas , 904 So.2d 440, 443 (Fla. 4th DCA 2005) ). The burden of proving underemployment rests with the party moving for imputation. Andrews v. Andrews , 867 So.2d 476, 478 n.2 (Fla. 5th DCA 2004).
When imputing income, trial courts must consider the spouse's "recent work history, occupational qualifications, and prevailing earnings level in the community." § 61.30(2)(b), Fla. Stat. (2018) ; see Freilich v. Freilich , 897 So.2d 537, 543 (Fla. 5th DCA 2005) ("Borrowing from this [child support] statute, the courts consider the same factors in determining the amount to impute for alimony awards and attorney's fees."); see also Broga v. Broga , 166 So.3d 183, 185 (Fla. 1st DCA 2015) ("For purposes of alimony awards, courts reviewing imputation of income have applied the same factors as those applied to imputing income for child support." (quoting Gray v. Gray , 103 So.3d 962, 967 (Fla. 1st DCA 2012) ) ).
Before imputing income, a trial court must make a finding that the party has not used its best efforts to secure income "at a level equal to or better than that formerly received." Schram , 932 So.2d at 249-50. A party's best efforts to find work "do not include retraining, but only finding a job for which one is already qualified." Castaldi v. Castaldi , 968 So.2d 713, 715 (Fla. 2d DCA 2007). For example, in Hinton v. Smith , the trial court imputed $ 30,000 in annual income to the former *277 wife "based on the conclusion that she could have earned [that amount] if she had completed her degree." 725 So.2d 1154, 1156 (Fla. 2d DCA 1998). While she promised in her marital settlement agreement "to complete her last two courses" needed to obtain her accounting degree, the trial court found she had "refused to comply with [this] agreement by willfully failing" to complete the coursework. Id. On appeal, the Second District reversed, reasoning that the "statute directs the trial court to consider the spouse's 'occupational qualifications,' not potential occupational qualifications." Id. at 1157.
Likewise, in Berger , the Fourth District reversed a trial court's imputation of a teacher's salary based on a vocational expert's testimony that the former wife "could earn a starting teachers [sic] salary [within] two years." 201 So.3d at 823 (Fla. 4th DCA 2016). Because the wife did not "have teaching credentials," the Fourth District reasoned that the expert's testimony "was based on mere speculation" and thus was "not a proper consideration." Id. ; see also Morin v. Morin , 923 So.2d 582, 584 (Fla. 5th DCA 2006) (holding that imputed income must be based on jobs for which the spouse "is adequately trained").
Here, the trial court's focus was not on whether Appellant used her best efforts to secure income "at a level equal to or better than that formerly received." See Schram , 932 So.2d at 249-50. Instead, it improperly focused on Appellee's expert's testimony that Appellant could maximize her income if she pursued teaching, even though it would require further education or retraining.
In Alcantara v. Alcantara , the Third District found the trial court erred in awarding bridge-the-gap alimony to the former wife in a nineteen-year marriage based on the speculative testimony of the husband's expert of what wife's financial circumstances would have been if she moved to Hawaii. 15 So.3d 844, 845-46 (Fla. 3d DCA 2009). As here, the former husband in Alcantara was a career member of the military who was able to "pursue college and graduate degrees" during the marriage, and who entered private employment earning considerably more near the end of their nineteen-year marriage than he earned earlier. Id. at 845-47. Like Appellant here, Ms. Alcantara was a homemaker caring for the couple's children during most of the marriage, while her husband was the primary breadwinner. Id. at 844-45. The Third District found that the presumption of entitlement to permanent periodic alimony was not overcome by the husband's expert's speculative testimony. Thus, Alcantara , Castaldi , Hinton , Morin , and Berger all support Appellant's argument that the trial court abused its discretion in failing to award permanent alimony, and in imputing income of $ 43,000 to her based on speculation as to what Appellant might earn if she were to receive additional training and education.
Accordingly, we hold that the evidence did not overcome the presumption in favor of permanent alimony, nor did the evidence support imputing an annual income of $ 43,000 to Appellant. Because the trial court abused its discretion in awarding durational rather than permanent periodic alimony to Appellant, and because the trial court did not base its imputation of income on Appellant's "recent work history, occupational qualifications, and prevailing earnings level in the community," we reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED for further proceedings.
COHEN and LAMBERT, JJ., concur.