Enid B. COSGRIFF, Harold M. Isbell, Rainer M. Dahl, and the Continental Bank and Trust Company, as Trustee for Lyn C. Isbell and Patricia D. Dahl, Plaintiffs and Respondents,

v.

George M. SCHNEITER, and Joan D. Schneiter, Individually and as custodian for Stephen D. Schneiter, Daniel D. Schneiter, George D. Schneiter and Michael D. Schneiter, Defendants and Appellants.

No. 15943.

Supreme Court of Utah.

Sept. 4, 1979.

Kent H. Murdock and Thomas A. Quinn of Ray, Quinney & Nebeker, Salt Lake City, for defendants and appellants.

Warren Patten and Charles Casper of Fabian & Clendenin, Salt Lake City, for plaintiffs and respondents.

CROCKETT, Chief Justice:

Plaintiffs, successors in interest to Walter E. Cosgriff, brought this action for a declaratory judgment that they owned the controlling interest in the Lake Hills Golf Club, Inc., of Billings, Montana. Defendants, successors in interest to George H. Schneiter, joined issue and counter-claimed requesting a judgment that the stock ownership of that corporation is owned equally between plaintiffs and defendants and asked for reformation of stock certificates to conform thereto. Upon a trial to the court, it made findings in favor of and rendered judgment for the plaintiffs. Defendants appeal.

In September of 1956, George H. Schneiter ("Schneiter, Sr."), Walter E. Cosgriff ("Cosgriff") and Ven Savage ("Savage") formed the Billings Golf Club, a Montana corporation. The name was later changed to the Lake Hills Golf Club ("Lake Hills").

The authorized capital of the corporation was stated as 500 shares with a par value of $100 per share. In 1956, there were three issues of stock, resulting in Cosgriff owning 84 shares and Schneiter, Sr. and Savage owning 83 shares each. In the following year Cosgriff and Schneiter, Sr. bought out Savage's interest for $23,000, of which each paid Savage one half. In accordance with their agreement, on October 10, 1975, the 83 Savage shares were issued as transfer shares as follows:

(a) Certificate No. 10 for 41½ shares to Cosgriff;

(b) Certificate No. 11 to Schneiter, Sr. for 40½ shares; and

(c) Certificate No. 12 for one share to George M. Schneiter, ("Schneiter, Jr.").

The defendants make a contention that the one share issued to Mr. Schneiter, Jr. was an extra share issued by the corporation, which would give the Schneiters equal ownership with Mr. Cosgriff. In that regard certain facts are to be noted: George M. Schneiter, Jr.'s own testimony was that the $100 he paid for the share was given to his father; and that he could not recall, nor was there any evidence, which would show that the money was paid to the corporation. Further, certificate No. 11 shows the typed words "forty and one half shares," and handwritten over that is the figure "41½." The stub contained in the Lake Hills stock record book for Certificate No. 11 is so obliterated that the number of shares written thereon cannot be read. There was evidence that it was Mr. Schneiter, Jr. who obliterated the stub.

Within a month of the transfer of the Savage stock, the corporation issued the remaining 250 authorized shares. Of these Cosgriff and Schneiter, Sr. each received 125 shares. This resulted in Cosgriff owning 250½ shares and the two Schneiters owning 249½ shares of the stock. On the basis of the evidence, and particularly in view of the fact that Schneiter, Sr. kept the corporate records and issued the certificates, the trial court was justified in viewing the corporate records and the certificates as correctly reflecting the number of shares owned by the respective parties.

The gravamen of the defendants' contention is that notwithstanding the facts above stated, there is other evidence which should have convinced the trial court that the records did not represent the facts. They maintain that the unequal division of the Lake Hills stock was not intended by the parties, but rather was the result of a mutual mistake; and also argue that the plaintiffs and their predecessor, Cosgriff, engaged in conduct that caused the defendants to believe that the stock was owned equally by the parties, and that the plaintiffs should therefore be estopped from asserting otherwise.

The evidence relied upon by the defendants consists primarily of certain assertions about the ownership of the stock, particularly some made by plaintiffs' predecessor, Walter E. Cosgriff, the main ones of which we quote the pertinent parts:

Cosgriff's letter of September 3, 1957, to Savage stating:

. . . [each of the parties have] a right to purchase our pro rata share. It is contemplated that $25,000 shall be raised . . . which would mean that each of us would have to put up $8,333.33 . . ..

Cosgriff's letter of September 18, 1957, to Schneiter in regard to repurchasing Savage's stock:

you [Schneiter, Sr.] would want and would expect to put up half of this money so that we would each own a 50% interest . . .

Schneiter, Sr.'s transmittal letter enclosing Cosgriff's share of Savage's repurchased stock:

I issued the stock to him [Schneiter, Jr.] out of my portion thinking that you would probably prefer to maintain a fifty percent interest.

Cosgriff's letter of May 29, 1961, to the Sporting Goods Industries Clearing House:

Mr. George Schneiter is still co-owner of the Lake Hills Golf Club . . . The other half of the stock belongs to me.

Mr. Robert Barr's letter of July 6, 1972, on behalf of Continental Bank and Trust to Prudential Federal Savings and Loan Association:

Please be advised that the Lake Hills Golf Club is owned by Mr. George Schneiter (one-half) and by the above reference account, Cosgriff Heirs, whom we represent (one-half) . . .

I can assure you that inasmuch as there is equal ownership it would not be in the best interest of this account to arbitrarily call these notes, and the principals involved have no intention of doing so . .

Sparing detailed analysis of the foregoing items, we make the following observations:

It is not surprising to find that when controversy over the ownership of property arises, parties tend to see evidence and occurrences as serving their own interests. Specifically in this instance, the defendants seem to so observe the just-quoted statements as consistent with their desires. However, for the trial court, whose obligation it is to be impartial, it is not only permissible, but it is in keeping with his judicial responsibilities, that in making his analysis of those assertions he consider the circumstances out of which they arose and the purpose for which they were made. In doing so, he could well regard them as but references to the general character of the respective ownership interests of the parties, and not as purporting to deal with their specific numbers of shares. What is said about their purchase of Mr. Savage's shares refers to the equal ownership of the shares they were acquiring, rather than to equal ownership of their previously owned shares in the corporation. The letters to Sporting Goods Industries and to Prudential Federal Savings, seen in their entire context, appear to be for the general purpose of supplying information as to credit.

In viewing the total evidence, the trial court found that the ownership of the stock was intended to be as issued, with Cosgriff owning one more share than Schneiter, to give him the controlling interest, just as the shares were originally issued. This was not changed when they purchased Mr. Savage's shares for which they each paid half and each received half. The trial court found in accordance with the plaintiffs' evidence: that Mr. Schneiter, Sr. had told Cosgriff that he wanted to bring his son, Schneiter, Jr., into the corporation, and for that purpose would issue one of the Savage shares to the son, to which request Cosgriff had no objection; and this is what appears to have been done.

■ The position essayed by the defendants has these difficulties: that the corporate records and the stock certificates provide a sound evidentiary foundation for the trial court's finding; that, inasmuch as they are in writing, their effect could only be

overcome by clear and convincing evidence. This was the defendant's burden to meet;[1] and whether the evidence reached that quantum of proof was for the trial court to determine.[2]

It is further to be noted that a statement made by the court, that defendants had not met the requirement of a lesser burden of proof, i. e., by a preponderance of the evidence, would have no adverse effect upon the defendants, nor impair the solidarity of his finding.

Upon our survey of the record in the light of the principles of law discussed herein it is our opinion that the trial court could fairly and reasonably remain unconvinced that the defendants had met their burden of proving that the issuance of stock certificates of the Lake Hills Golf Club was a mutual mistake which should be reformed, or that the plaintiffs had engaged in conduct which so misled the defendants that the plaintiffs should be estopped to assert that they owned one more share, and thus the controlling interest in the corporation.

Affirmed. Costs to plaintiffs (respondents).

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

1. *Naisbitt v. Hodges*, 6 Utah 2d 116, 307 P.2d 620.

2. *Child v. Child*, 8 Utah 2d 261, 332 P.2d 981.