722 So.2d 273 (1998)
James E. SACKETT, Appellant,
v.
Ernest W. SHAHID, individually, E & M Land Investors, Ltd.; Margaret P. Shahid, individually; and Shoreline Realty of Destin, Inc., n/k/a Shahid, Inc., a Florida corporation, Appellees.
No. 96-4607
District Court of Appeal of Florida, First District.
December 28, 1998.
Gene D. Brown, Tallahassee, for Appellant.
Steven B. Bauman of Smith, Grimsley, Bauman, Pinkerton, Petermann, Saxer & Wells, Fort Walton Beach, for Appellees.
*274 VAN NORTWICK, J.
James E. Sackett appeals an adverse judgment entered in supplementary proceedings filed by him and Vivian R. Sackett, his late wife,[1] by which the Sacketts sought to collect their judgment against appellees Ernest W. Shahid and E & M Land Investors, Ltd. (E & M). Because we conclude that the trial court erred in ruling that the capital stock of Shoreline Realty of Destin, Inc. (Shoreline) was owned by Mr. Shahid and appellee Margaret M. Shahid, his wife, as tenants by the entireties, we reverse, in part, and remand for further proceedings.
The Sacketts obtained a judgment in the amount of $468,757.64 against Mr. Shahid and E & M following their default on an unsecured promissory note held by the Sacketts. The Sacketts then filed a supplementary proceeding against Mr. Shahid, Mrs. Shahid, E & M and Shoreline, the appellees in the instant appeal, seeking to levy upon shares in two corporations allegedly owned by Mr. Shahid individually and seeking to have several transactions involving Mr. and Mrs. Shahid and several businesses in which they allegedly held ownership interest set aside as fraudulent conveyances. Following a non-jury trial, the lower court entered judgment in favor of the appellees as to all challenged transactions.
The trial of the supplementary proceeding focused primarily on three issues: (1) whether the capital stock of Shoreline was solely owned by Mr. Shahid, rather than by Mr. and Mrs. Shahid as tenants by the entireties, and was thereby subject to levy to satisfy the appellant's judgment; (2) whether the various transfers of up to $50,000 from Beachside Café and Bar, a business allegedly owned by Mr. Shahid, to Mrs. Shahid were fraudulent transfers under section 726.106(2), Florida Statutes (1988); and (3) whether shares of capital stock in First Bank Crestview/FBC Holding Company, Inc. were owned individually by Mr. Shahid or by Mr. and Mrs. Shahid as tenants by the entireties.
With respect to the ownership of the stock of Shoreline, the facts were in conflict, the corporate books and records of Shoreline were grossly inadequate, and the trial record incomplete. Shoreline's initial articles of incorporation reflect that Mr. Shahid was the incorporator and sole shareholder at its incorporation in 1981. Although the parties testified that Mr. Shahid transferred a realty business operated by him as a sole proprietorship, there is no documentation of this transaction in the record. The record reflects that Shoreline's stock transfer ledger was blank and no stock certificates were issued. No minutes or written consents, see section 607.0821, Florida Statutes (1995), of the incorporator, shareholder(s), or director(s) were in existence to reflect any authorization of the initial issuance of shares to Mr. Shahid or the consideration transferred by Mr. Shahid as incorporatory shareholder. Similarly, although the Shahids testified that they intended to have the stock in Shoreline transferred into their joint names as tenants by the entireties, there is no documentation in the record (i) of a transfer by Mr. Shahid of any part of his sole ownership interest to his wife or to himself and his wife as tenants by the entireties or (ii) of the issuance by Shoreline of any shares of stock to Mrs. Shahid or to Mr. and Mrs. Shahid as tenants by the entirety. The record contains only an unexecuted form document purporting to make a transfer of the stock from Mr. Shahid, as the sole shareholder, to himself and his wife as tenants by the entireties, but neither the Shahids nor their attorney could produce an executed copy of this instrument. Federal income tax returns filed by Shoreline do indicate that the stock ownership of the corporation changed over time. From the time of incorporation through 1990, the tax returns show Mr. Shahid as the sole shareholder; from 1991 through 1994, Mrs. Shahid was shown as owning 99% of the capital stock and Mr. Shahid owning 1%; and, for 1994 and 1995, the Shahids are shown as owning all of the stock as tenants by the entireties.[2]
*275 Faced with this conflicting and incomplete record evidence, the lower court found that the Shoreline stock was jointly owned by the Shahids as tenants by the entirety. The lower court's ruling, however, was based on the erroneous premise that a party's stated intent is controlling in the establishment of a tenancy by the entireties in corporate stock in the face of the existence of unambiguous evidence of individual ownership by Mr. Shahid and the lack of any instrument transferring ownership to Mrs. Shahid or creating a tenancy by the entireties.
When a husband and wife acquire personal property in their joint names, no presumption arises that a tenancy by the entireties has been created. See First Nat'l Bank of Leesburg v. Hector Supply Co., 254 So.2d 777, 780-781 (Fla.1971); Robinson v. Robinson, 651 So.2d 1271, 1272-1274 (Fla. 4th DCA 1995); Amsouth Bank of Florida v. Hepner, 647 So.2d 907, 909-910 (Fla. 1st DCA 1994). As the Supreme Court explained in Hector Supply:
In realty matters, where property is acquired specifically in the name of husband and wife, we consider it to be a rule of construction that a tenancy by the entireties is created, although fraud may be proven.... [I]n personalty matters, a different standard obtains: not only must the form of the estate be consistent with entirety requirements, but the intention of the parties must be proven. The reason for this double standard is easily understood. Realty matters are matters of record which occur infrequently, and which generally involve formal transactions necessarily requiring consent of both spouses. Personalty, on the other hand, is generally not under mandate of record; it may easily be passed by either spouse without mutual consent or without knowledge of the other spouse; finally, it may change hands with great frequency, as in the case of the checking account. Another reason for the distinction is that the application of entireties concepts to personalty becomes exceedingly complex as the nature of the personalty increases in sophistication, and the judicial mind seeks to require greater safeguards lest the tenancy be abused.
Hector Supply, 254 So.2d at 780 (citations omitted).
Thus, in addition to proof of the parties' intent:
A viable tenancy by the entirety, with regard to either realty or personalty, must possess always and at the same time the following characteristics of form: unity of possession (joint ownership and control); unity of interest (the interests must be the same); unity of title (the interests must originate in the same instrument); unity of time (the interests must commence simultaneously); and, the unity of marriage.
Id. at 781.
Where property is titled or held of record, the documentation of the form of title can be determinative. For example, in Hepner this court reversed a trial court's ruling that a truck was held by the entireties because, despite extrinsic evidence as to the parties' intent, the form of the estate created in the title document was inconsistent with the creation of an estate by the entirety. Hepner, 647 So.2d at 909-910.
Because the personal property considered in the instant case is corporate stock, we look to the requirements for holding and transferring securities to determine the proof required to establish ownership of stock by the entireties. In our analysis, we start with the principle that, corporate records provide a prima facie evidentiary basis for determining ownership of corporate stock. See, e.g., DLH, Inc. v. Russ, 566 N.W.2d 60, 72-73 (Minn.1997); Matter of Steward, 229 A.D.2d 500, 501, 646 N.Y.S.2d 135, 136 (N.Y.App.Div. 1996); Cosgriff v. Schneiter, 600 P.2d 540 (Utah 1979). Thus, when a party's name appears as a shareholder in the official corporate records, the burden is on that party to establish that he or she was not a shareholder. Some courts have expressed this principle in terms of estoppel, so that a person who permits his name to be registered on the *276 books of the corporation as the owner of shares of stock may be estopped from disputing his ownership of the shares. See generally 18A Am.Jur.2d, Corporations § 740 (1985).
The Uniform Commercial Code, Chapter 678, Florida Statutes (1995), sets forth the requirements for effecting the transfer of corporate securities.[3] These provisions apply to stock of closely held corporations such as Shoreline. Allen v. Coates, 661 So.2d 879, 881-882 (Fla. 1st DCA 1995). Section 678.313(1), Florida Statutes (1995), provides, in relevant part, that:
Transfer of a security ... to a purchaser occurs only:
(a) at the time the purchaser ... acquires possession of a certificated security;
(b) At the time the transfer ... of an uncertificated security is registered to the purchaser....
We note that the provisions of the Uniform Commercial Code "are not exclusive and do not undercut the validity of a gift of securities which is otherwise effective under common law standards." Tanner v. Robinson, 411 So.2d 240, 242 (Fla. 3d DCA 1982). Under the common law, however, transfer of a gift of securities also requires delivery of the securities, id. at 242, or transfer on the corporate books and records. See generally Annot., Transfer on Corporate Books as Sufficient for Gift of Stock, 6 A.L.R.4th 250 (1981).
The only corporate records of Shoreline in evidence which indicate stock ownershipthe initial articles of incorporation show Mr. Shahid as the sole shareholder. We recognize that closely held corporations often do not act with as much formality as larger corporations, see Etheredge v. Barrow, 102 So.2d 660, 663 (Fla. 2d DCA 1958), and that shareholder interest may be established by extrinsic evidence. See Zinger v. Gattis, 382 So.2d 379, 380 (Fla. 5th DCA 1980); but see Tsavaris v. NCNB Nat'l Bank of Florida, 497 So.2d 1338, 1339 (Fla. 2d DCA 1986). Nevertheless, where a party controls a closely held corporation and desires to establish important rights and interests through the corporation, the following of so-called "corporate formalities" is important. In fact, large parts of the field of corporate law have to do with requirements which may appear to be mere formalities. Corporations come into existence and are accorded their characteristics because of formal acts. See, e.g., §§ 607.0202, 607.0203 and 607.0302, Fla. Stat. (1997). As Federal Circuit Judge Richard A. Posner has observed, corporate law "is an area of law where formalities are important, as they are the method by which sophisticated businessmen make their contractual rights definite and limit the authority of courts to undo their deal." Frandsen v. Jensen-Sundquist Agency, Inc., 802 F.2d 941, 947 (7th Cir.1986). As a result, a person acting through a corporation disregards these formalities at his or her risk.
Applying these principles to the instant case, we hold that, even if extrinsic evidence exists which might show that the Shahids intended Mrs. Shahid to possess a shareholder interest in Shoreline, because Mr. Shahid controlled the ability of Shoreline to issue shares of stock or transfer shares on its stock register, in the absence of any documentary evidence sufficient under chapter 678, the record evidence here is insufficient as a matter of law to establish transfer of the Shoreline stock to the Shahids as tenants by the entireties. We thus reverse the ruling of the trial court on this issue.
Because of its resolution of the issue of the ownership of the Shoreline stock, the trial court never reached the question of whether the 1995 sale of Shoreline to FBS Acquisitions, Inc., constituted a fraudulent transfer under section 726.105(1)(b), Florida Statutes (1995). Accordingly, on remand, the lower court is instructed to consider this issue.
Appellant also argues that the lower court erred when it found that the stock of the First Bank of Crestview/FBC Holding Co., Inc., was held by Mr. and Mrs. Shahid as tenants by the entireties and, hence, was exempt from the appellant's claims. Even though the bank stock was issued in the *277 name of "Ernest W. Shahid or Margaret P. Shahid," we have recognized that "[t]he conjunction used between the names of the husband and wife is not determinative of whether a tenancy by the entireties exists. This is determined by the facts." Smith v. Hindery, 454 So.2d 663, 664 (Fla. 1st DCA 1984), disapproved on other grounds in In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla.1986); see also Norman v. Bank of Hawthorne, 321 So.2d 112 (Fla. 1st DCA 1975). The record evidence on this issue is also incomplete and in conflict. Nevertheless, we find competent and substantial evidence to support the trial court's ruling and we affirm. Given our affirmance of the ownership issue, it is unnecessary for us to consider whether the lower court erred in finding that the appellant's claim against the Shahid's First Bank of Crestview/FBC Holding Co. stock was barred by the statute of limitations.
Finally, with respect to appellant's claim relating to Mr. Shahid's transactions with Beachside Café & Bar, we also find competent, substantial evidence to support the lower court's determination that appellants failed to establish that Mr. Shahid or E & M owned any interest in this general partnership. Accordingly, we affirm the trial court's ruling with respect to this issue as well.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
JOANOS and WOLF, JJ. concur.
NOTES
[1] During the pendency of this action Mrs. Sackett died and the action has been prosecuted by Mr. Sackett.
[2] At trial, Mrs. Shahid testified that at all times she owned 99% of the Shoreline capital stock. Separate stock ownership would preclude a finding of ownership as tenants by the entireties because of the lack of unity of interest. See Amsouth Bank v. Hepner, 647 So.2d 907 (Fla. 1st DCA 1994).
[3] The version of Chapter 678, Florida Statutes (1995), applicable to the instant action was substantially revised in 1998. See ch. 98-11, Laws of Florida (1998).