[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 16, 2010
JOHN LEY
CLERK

No. 10-10048
Non-Argument Calendar
_____

D.C. Docket No. 9:07-cv-80334-KAM

ALAN GUTHARTZ

Plaintiff - Appellant

versus

PARK CENTRE WEST CORP.,
4685 HAVERHILL, INC.,
SHINING STAR RANCH, INC.,
BARNETT GUTHARTZ,
JANET BARRY,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 16, 2010)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellant Alan Guthartz sued his father, sister, and three corporate entities under 28 U.S.C. § 2201(a) seeking a declaration that he is the rightful owner of at least a portion of the three corporate defendants. Having reviewed the record and decision below, we find that the district court committed neither errors of fact nor law and, thus, affirm.

Alan Guthartz alleges that, ten years prior to commencing this lawsuit (and one year before her death), his mother mailed him three "stock powers" for shares of ownership in three companies owned by his parents.[1] According to the appellant, he placed the stock powers in a fireproof box where he left them for a decade, not appreciating their significance. Around the time that his father attempted to evict him from the family's New York home, the appellant, claiming to be a shareholder, attempted to inspect the records of the three corporate defendants. The defendants, appellee on this appeal, disputed appellant's allegations and accused him of altering old corporate documents that were left in the family home. Furthermore, defendants presented evidence that, even if appellant's allegations were true, they would not have effected a transfer of

---

[1]A "stock power" is a power of attorney that allows the current owner of a registered security to transfer that ownership to another. The testimony showed that stock powers traditionally accompany security certificates when there is a present or possible future need to re-assign ownership, such as in the context of loan collateralization. The shares in dispute were uncertified.

corporate ownership under Florida law or entitled appellant to access of the corporate records. The court below ruled for the defendants, finding that appellant's father and mother owned the corporations as tenants by the entirety—making a unilateral transfer of shares impossible—and that appellant's father lacked any donative intent to effectuate a transfer of the shares. Furthermore, the court found that, even taking appellant's allegations as true, the purported transaction did not conform to the requirements of Florida common law or the Uniform Commercial Code ("UCC").

On appeal, we review the district court's conclusions of law *de novo*, and its findings of fact for clear error. *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1282 (11th Cir. 2006). The district court made two clear findings of fact in this case: (1) that appellant's father and mother owned the corporations in dispute as tenants by the entirety; and (2) that, even if one assumed appellant's story to be true, appellant's father did not have the donative intent required to transfer ownership of the assets to his son. The appellant argues that the former determination is clearly erroneous because the disputed stock powers contain designations that the parent-signatories owned the shares as tenants in common. After reviewing the record, we determine there was a wealth of information in the record supporting both of the district judge's factual determinations and very little

3

evidence supporting the opposite conclusions. As the defendants correctly point out in their brief, when the evidence before the factfinder fairly supports each of two possible conclusions, the factfinder's choice between the two will not be "clearly erroneous." *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S. Ct. 177, 179 (1949). Here, appellant has failed to demonstrate that the evidence even permits a second view.

These undisturbed findings of fact dictate a judgment in favor of the defendants. Even if we accept appellant's argument that stock powers can convey ownership of uncertified shares, appellant's mother was without power to unilaterally transfer ownership of those shares. *See Sitomer v. Orlan*, 660 So. 2d 1111, 1113-14 (Fla. Dist. Ct. App. 1995). Furthermore, regardless of the nature of the ownership of the shares at issue, the transfer in question does not conform to the requirements of the Uniform Commercial Code for transferring unregistered stock. *See* FLA. STAT. §§ 678.1021(1)(l), 1071(1)(b) (requiring that "instructions" directing the transfer of uncertified shares be made to the issuer); FLA. STAT. § 678.3011(2)(a)–(b) (defining "delivery" for uncertified securities by registration with the corporation). Such requirements exist to prevent situations exactly like the one at bar: he said/she said lawsuits where one party asserts that a transfer was made based on some document not reflected in the corporate records. These

4

requirements apply with equal force to gifts. *See Sackett v. Shahid*, 722 So. 2d 273, 276 (Fla. Dist. Ct. App. 1998).

The district court's conclusions of law that appellant's mother was without power to make a unilateral conveyance of corporate ownership and, even had she been, the form of this conveyance did not effect any such transfer were not erroneous. Therefore, the judgment below is affirmed.

**AFFIRMED.**