DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**NANCY B. HUA,**
Appellant,

v.

**DENNIS H.L. TSUNG,**
Appellee.

No. 4D15-4213

[July 5, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. FMCE13009407 44 90.

Dirk Lorenzen of Lorenzen Law, Coral Gables, for appellant.

Steven Friedman of Law Office of Steven Friedman, Pembroke Pines, for appellee.

**ON MOTION FOR REHEARING**

FORST, J.

We grant the motion for rehearing, withdraw our previously issued opinion, and substitute the following.

Appellant Nancy Hua ("Wife") appeals the trial court's final judgment of dissolution of marriage. Primarily, Wife contends that the trial court erred by (1) not awarding her permanent alimony; (2) failing to classify certain stock as assets in determining support; (3) ordering the parties to pay the proceeds of the sale of rental property to a certain non-party creditor; and (4) denying her motion for attorney's fees. We address these arguments below, while affirming without discussion the other issues raised in Wife's appeal, including the classification of certain loans as marital and the legality of the timesharing plan with respect to the couple's children.

**Background**

Wife's then-husband Dennis Tsung ("Husband") filed for divorce in

2013. By that time, the couple had been married for seventeen-and-a-half years. Both spouses were in their early forties by the time of divorce. Husband was the principal source of income throughout the marriage (abetted by the generosity of his parents), while Wife was both homemaker and, in the last years of the marriage, a stay-at-home mother. There was considerable evidence introduced at trial concerning Husband's various business ventures throughout the marriage. At the time of divorce, Husband was a part owner of a restaurant. He lived in Brazil with a new girlfriend and their two minor children. Wife, meanwhile, remained in Broward County, Florida, where the couple had lived, taking care of the couple's children who were also minors.

Throughout the marriage, Husband and Wife received generous gifts from Husband's parents. In 1999, Husband's father purchased the couple a house in California valued at approximately $800,000. The house was later sold. Then, when the couple moved to Broward County, Husband's parents again purchased a marital home for the couple. Evidence at trial suggested the Broward County home's value was about $650,000 to $700,000. The couple also decided to purchase a rental home (hereinafter "rental property"), subject to a mortgage. The value of the rental property was about $300,000 to $350,000. When Husband could no longer afford to pay the mortgage sometime around 2007 or 2008, his father loaned him approximately $260,000 to pay it.

Although the couple lived a relatively comfortable life during their marriage, Husband's financial affidavits and tax returns demonstrated that lifestyle was due in large part to his father. Husband's latest amended financial affidavit, for 2014, showed that he earned a monthly gross income of $6,295. He listed $1,281,300 in total assets, and over $1,035,199 in total liabilities. Husband reported that his father gave him a substantial amount of assets, but also testified that there were strings attached in the form of great debt. In fact, at trial, the court found that Husband's father loaned Husband approximately $1,410,000 over the course of the marriage. On his financial affidavit, Husband also claimed he owned contingent assets—shares in a company called DSC Holdings Limited—valued at $885,000. Evidence admitted at trial showed the true value of these shares to be in excess of one million dollars. As for Wife, she made no income, and argued at trial that her monthly reasonable living expenses exceeded $20,000. However, the trial court determined that Wife's temporary alimony award, which totaled $2,500 a month and included an unspecified amount of rental income from the rental property, was sufficient to cover her reasonable living expenses.

As such, the trial court fashioned its alimony award after the temporary

2

one.  It awarded Wife "conditional rehabilitative alimony," where Wife would receive $2,500 a month for two years as she attended nursing school, which she expressed interest in and which an expert testified she could accomplish in that time frame.  Husband would pay the costs of nursing school, which could total up to $12,000.  The expert, finding Wife to be in good health, also concluded Wife could earn between $49,920 and $58,240 per year as a full-time nurse.

## Analysis

### A.  Alimony Award

We review the trial court's determination of the type of alimony to award for an abuse of discretion.  *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203-04 (Fla. 1980).  The trial court's judgment must be supported by competent, substantial evidence.  *Gray v. Gray*, 103 So. 3d 962, 963 (Fla. 1st DCA 2012).  "However, '[w]here a trial judge fails to apply the correct legal rule . . . the action is erroneous as a matter of law.'"  *Ondrejack v. Ondrejack*, 839 So. 2d 867, 870 (Fla. 4th DCA 2003) (alterations in original) (quoting *Kennedy v. Kennedy*, 622 So. 2d 1033, 1034 (Fla. 5th DCA 1993)).

"In determining whether to award alimony or maintenance, the court *shall* first make a specific factual determination as to whether either party has an actual need for alimony or maintenance *and* whether either party has the ability to pay alimony or maintenance."  § 61.08(2), Fla. Stat. (2014) (emphasis added); *see also Sherlock v. Sherlock*, 199 So. 3d 1039, 1043 (Fla. 4th DCA 2016).  After making these two requisite ("shall") "specific factual determination[s]," the court must then determine the type of alimony to award.  § 61.08(2), Fla. Stat. (2014).  The alimony statute lists several factors for a trial court to consider when choosing the type of alimony, including ("but not limited to") the duration of the marriage, age of the parties, financial resources of the parties, earning capacities of the parties, employability of the parties, and contribution of the parties to the marriage.  *Id.*

Once the trial court determines that alimony is appropriate, it must choose what type of alimony to award.  There is a rebuttable presumption in the alimony statute that a marriage lasting more than seventeen years is a long-term marriage.[1]  § 61.08(4), Fla. Stat. (2014). There is also a

---

[1] "The length of a marriage is the period of time from the date of marriage until the date of filing of an action for dissolution of marriage."  § 61.08(4), Fla. Stat. (2014).

rebuttable presumption in our case law and that of every sister District Court that an award of permanent alimony is appropriate after dissolution of a long-term marriage. *Fichtel v. Fichtel*, 141 So. 3d 593, 595 (Fla. 4th DCA 2014); *Motie v. Motie*, 132 So. 3d 1210, 1213 (Fla. 5th DCA 2014); *Broemer v. Broemer*, 109 So. 3d 284, 289-90 (Fla. 1st DCA 2013); *Alcantara v. Alcantara*, 15 So. 3d 844, 845-46 (Fla. 3d DCA 2009); *Schlagel v. Schlagel*, 973 So. 2d 672, 676 (Fla. 2d DCA 2008). "Neither age nor a spouse's ability to earn some income will alone rebut the presumption." *Motie*, 132 So. 3d at 1213.

As we recently explained, "[i]n almost every case [involving one spouse who has historically been the homemaker in a long-term marriage and a subsequent disparity in income], courts have found that permanent alimony was appropriate." *Dickson v. Dickson*, 204 So. 3d 498, 503 (Fla. 4th DCA 2016) (alterations in original) (quoting *Motie*, 132 So. 3d at 1213). However, this is by no means an irrebuttable presumption. A trial court can overcome it by making detailed findings of fact regarding a spouse's need *and* the other spouse's ability to pay, as well as by considering all the relevant statutory factors listed in section 61.08(2).

The trial court's final judgment implicitly determined that Wife would have a need for alimony, but not beyond the $2,500 she had been receiving each month pursuant to the temporary spousal support order (supplemented by a separate child support provision, gross rental income from the couple's rental property, and Husband's payment of taxes and insurance for the marital property), and that this monthly payment would end in two years, at which time the trial court expected Wife to be holding a full-time job. The final judgment does not include any "specific factual determination" with respect to Husband's ability to pay alimony beyond finding that Husband's "current living expenses to support himself, his family in Brazil and his two children born of this marriage is not sufficient to pay the rehabilitative alimony award." The judgment appears to conclude that, until the marital home is sold (entitling Husband to half of the proceeds), Husband lacks the ability to pay alimony, even the limited rehabilitative alimony conditionally awarded by the trial court.

As noted above, this was a "long-term marriage" and, as such, "the trial court was required to apply the rebuttable presumption in favor of permanent alimony." *Dickson*, 204 So. 3d at 503. The trial court's judgment erroneously fails to make any reference to this presumption in choosing to award Wife conditional rehabilitative alimony, although the judgment does state that the factors enumerated in section 61.08(2) were considered, including the duration of the marriage.

4

The final judgment of dissolution awarded Wife rehabilitative alimony, consisting of $2,500 per month for two years (which the court erroneously calculated as totaling $62,000), plus Husband paying up to $12,000 in tuition for Wife to attend nursing school. The $2,500 per month is conditioned upon (1) Wife attending school to obtain her degree, and (2) the sale of the marital home (to provide funds for Husband to make the monthly support and tuition payments). In choosing conditional rehabilitative alimony, the trial court imputed to Wife "income equal to $2,500 per month," and also took into account, "[a]s an element of support," that Wife would be either living in the couple's rental property (she would need a new residence with the marital home being sold), or she would be receiving gross rental income from this rental property, with Husband paying half of the tax and insurance.[2] Thus, if Wife chooses not to attend nursing school, the final judgment leaves her with no alimony/support outside the precariously situated rental income, not even the $2,500 per month that she received as temporary support.

In the absence of specific findings and determinations as set forth above, the best course of action is to remand the issue of alimony to the trial court to (1) make explicit findings as to Husband's ability to pay alimony, and (2) recognize the presumption in favor of permanent alimony. *See Broemer*, 109 So. 3d at 290 (reversing and remanding in part because the court failed to address the initial rebuttable presumption of permanent alimony, let alone provide an explanation as to why it was not awarded). Should the trial court once again choose an alternative to permanent alimony, it must do so based on explicit findings referencing the factors set forth in § 61.08(2). Moreover, if upon remand the award is conditional (as it was in the final judgment at issue), the trial court must set forth an alternative alimony option if the conditions are not met.

*B.  Consideration of Husband's Ownership of Shares in DSC Holdings Limited in Calculating the Parties' Assets*

On appeal, Wife contends that the trial court erred by failing to consider thirty-four percent of the shares of DSC Holdings Limited, valued at more than one million dollars, as assets of Husband to be used in calculating support. We agree.

At trial, Husband's father testified that he transferred the shares to

---

[2] The judgment stipulates that this property must be sold if Wife remarried, if Wife cohabitated with another person, or when the youngest child attained majority, with the proceeds of that sale encumbered by a $260,000 loan from Husband's father that was made for the purchase of the home.

Husband in 2005. Husband was thus the legal owner in name of the stock. As the First District Court of Appeal explained, albeit in a different context:

> In our analysis, we start with the principle that, corporate records provide a *prima facie* evidentiary basis for determining ownership of corporate stock. Thus, when a party's name appears as a shareholder in the official corporate records, the burden is on that party to establish that he or she was not a shareholder. Some courts have expressed this principle in terms of estoppel, so that a person who permits his name to be registered on the books of the corporation as the owner of shares of stock may be estopped from disputing his ownership of the shares.

*Sackett v. Shahid*, 722 So. 2d 273, 275-76 (Fla. 1st DCA 1998) (citations omitted). Here, we too start our analysis of ownership of the stock by looking to who was the title owner. At trial, Wife submitted incontrovertible evidence that it was Husband. Moreover, on the stand, both Husband and his father agreed that the shares were in Husband's name.

Our decision regarding ownership of the stock is also guided by the principles of estoppel. At trial, Husband's father directly testified that the reason he placed ownership of the stock in his son's name was to avoid paying a forty percent "death tax" in Taiwan. The father acknowledged that he intended to bequeath the stock to Husband upon the father's death, but did not want to pay taxes. To accomplish this tax-avoidance objective, he needed to actually transfer ownership of the stock to his son before his (the father's) death. Now, though, it appears Husband and his father want it both ways. They wish to circumvent foreign tax obligations by placing ownership of the stock in Husband's name, yet circumvent our State's marital dissolution support laws by arguing those same assets are in reality the father's.[3] We are not persuaded.

One of our sister courts, in *Collinson v. Miller*, 903 So. 2d 221 (Fla. 2d DCA 2005), outlined the basis of our rejection of Husband's argument. There, the decedent's children also attempted to enforce a type of agreement that sought to evade taxes. *Id.* at 226. The court struck the arrangement down, explaining:

---

[3] We take no view on the legality of Husband's father's actions to circumvent foreign tax law. Our opinion is limited to noting that if the father had to place the shares in his son's name to avoid a tax, which he claims he did at trial, then he cannot as a matter of estoppel disavow the consequences of his actions.

> It seems odd, to say the least, that a court of equity would impose a constructive trust in favor of the Miller children . . . against a third party, to enforce an oral agreement specifically designed to evade taxes. If the constructive trust were upheld, it appears the Miller children would successfully obtain this property without paying the federal taxes due and owing based upon the agreement they sought to enforce.

*Id.* The court subsequently did not impose a constructive trust over the property in question. *Id.* at 228. We too are loath to grant Husband's request that we impose as an equitable remedy a resulting trust in the shares for his father. Instead, we hold that the shares were non-marital assets owned by Husband.[4]

We accordingly reverse and remand for the trial court to reconsider and recalculate its determinations of the various forms of support with the understanding that the shares at issue are assets of Husband rather than of his father. *See* § 61.08(2)(d), Fla. Stat. (2014) (requiring consideration of the financial resources of both parties, including nonmarital assets, in determining alimony); § 61.16(1) Fla. Stat. (2014) (requiring consideration of parties' financial resources in determining whether to award attorney's fees); § 61.30(11)(a)7. Fla. Stat. (2014) (allowing deviation from minimum child support based on the total available assets of relevant parties).

## C. *Equitable Distribution of Proceeds from the Sale of the Rental Property*

We review de novo whether a trial court has jurisdiction in a marital dissolution action to adjudicate the rights of a third-party creditor. *Sanchez v. Fernandez*, 915 So. 2d 192, 192 (Fla. 4th DCA 2005).

As noted above, the trial court awarded Wife the choice of living in the rental property or receiving the gross rental income until the home is sold, either voluntarily or because of one of the triggering conditions already described. The dissolution judgment discussed the equitable distribution of the proceeds from the sale of the rental property, noting that "[u]pon sale of the rental home . . . the net sale proceeds shall be divided 50% to the Petitioner [Husband] and 50% to the Respondent [Wife], after satisfying the $260,000 U.S. loan owed to Tsung [Husband's father]." The trial court also ordered that "[t]he $260,000.00 Tsung debt shall be satisfied at the

---

[4] Wife conceded at trial, and made no argument to the contrary in her briefs on appeal, that the shares were *nonmarital* assets, gifted to Husband alone both prior to and during the marriage.

time that this property is sold."

The trial court erred as a matter of law in directing the parties to repay Husband's father upon sale of the rental property. "In [a] dissolution action, the trial court does not have jurisdiction to adjudicate property rights of nonparties." *Noormohamed v. Noormohamed*, 179 So. 3d 379, 380 (Fla. 5th DCA 2015) (alteration in original) (quoting *Minsky v. Minsky*, 779 So. 2d 375, 377 (Fla. 2d DCA 2000)). Although a trial court in a dissolution judgment certainly can identify marital assets and liabilities, and allocate them to the parties pursuant to section 61.075(3), Florida Statutes (2014), it cannot adjudicate a debt. Here, by awarding part of the proceeds of the sale of the rental property to the father, the court essentially placed an equitable lien on the property to allow the father to secure repayment of the loan. The court thus converted him from an unsecured creditor into a secured one. On remand, the father can only pursue the debt, if he so chooses, by instituting a separate action. *See Labato v. Labato*, 433 So. 2d 620, 621 (Fla. 4th DCA 1983) (holding the trial court impermissibly imposed an equitable lien on the property by adjudicating the rights of non-parties, but reversing without prejudice to allow the non-parties to institute a separate action).

*D. Attorney's Fees Award*

We review a decision on a motion for attorney's fees for an abuse of discretion. *Henry v. Henry*, 191 So. 3d 995, 999 (Fla. 4th DCA 2016).

"An award of attorney's fees and costs is based on each spouse's respective need and ability to pay." *Fichtel v. Fichtel*, 141 So. 3d 593, 596 (Fla. 4th DCA 2014); *see also* § 61.16, Fla. Stat. (2014). In light of our reversal with respect to Husband's ownership of the shares in DSC Holdings Limited and our remand of the alimony issue, it is appropriate that we also remand Wife's request for Husband to pay her attorney's fees and costs and direct the trial court to revisit this issue, making "specific findings of fact—either at the hearing or in the written judgment—supporting its determination of entitlement to an award of attorney's fees and the factors that justify the specific amount awarded." *Arena v. Arena*, 103 So. 3d 1044, 1046 (Fla. 2d DCA 2013). "[V]ague findings present an obstacle to meaningful appellate review." *Id.* at 1047.

**Conclusion**

We recognize the inherent difficulty for a trial court tasked with preparing a final judgment of dissolution in a situation in which the parties have significant assets but limited income. The instant case was certainly

not "an ordinary divorce."

As set forth above, we reverse the final judgment as to the support determinations affected by the ownership status of the DSC Holdings Limited shares and the treatment of the proceeds from the sale of the rental property. We further reverse and remand with instructions with respect to the awards of alimony and attorney's fees. In revisiting these issues, the trial court must make explicit findings and conclusions and recalculate its equitable distribution award in light of Husband's "economic circumstances" being different from those initially considered by the court. *See* § 61.075(1)(b), Fla. Stat. (2014).

*Affirmed in part, reversed in part, and remanded.*

TAYLOR and CONNER, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

9